OPINION
{¶ 1} This matter is before the Court on the Notice of Appeal of Rocky L. Beverly, filed August 18, 2005. On March 22, 2005, Rocky was indicted by a Clark County grand jury on one count of burglary, in violation of R.C. 2911.12(A)(2), a felony of the second degree. On April 19, 2005, Rocky entered a plea of not guilty. On July 14, 2005, following a trial to a jury, Rocky was found guilty of burglary. The trial court sentenced him to a maximum prison term of eight years. *Page 2 
maximum prison term of eight years.
 {¶ 2} The events giving rise to this matter began on March 22, 2005, when Raymond Poe drove Rocky to the home of Tim Beverly and his wife, Kendra Bradley, so that Rocky could borrow some money from Tim, who is Rocky's cousin. Rocky entered Tim's home, and Raymond waited in the car. Tim was in the shower, preparing to attend a girl scout talent show in which his ten year old daughter, Sabrina, was to perform. After his shower, Tim met with Rocky and gave him ten dollars. Raymond then knocked on the door and Tim let him into the home. Kendra arrived home and she asked Raymond if the car outside her home belonged to Tisha Payne, a childhood friend of Kendra's and Raymond's girlfriend. Raymond told Kendra that the car did not belong to Tisha although it was in fact Tisha's car. Kendra told Tim that they were running late and needed to leave for the talent show. Rocky and Raymond left the home.
 {¶ 3} Rocky had been to the Beverlys' home before, and he knew that Tim kept a safe in his bedroom. Tim had paid Rocky from the safe in the past for work Rocky did for Tim. Sabrina testified that she observed Rocky walking through her home, looking around, before Tim got out of the shower. Sabrina stated that he was "messing around" by a kitchen window.
 {¶ 4} Kendra and Sabrina rode to the talent show together, and Tim drove separately. When the show was over, Kendra and Sabrina arrived home ahead of Tim. Kendra noticed that the little mason jars that she kept above her kitchen windowsill were on the floor, and that the curtain rod was broken. When Tim arrived home, he discovered that their safe was missing from the bedroom.
 {¶ 5} Kendra called the police, and when they arrived they dusted the home for *Page 3 
fingerprints. No usable prints were obtained.
 {¶ 6} Tim contacted Lisa Poe, Rocky's girlfriend and Raymond's sister, to find out where Raymond lived. Tim went to Raymond's home, and Raymond agreed to give a statement to the police. Raymond signed an affidavit describing his and Rocky's return to Tim and Kendra's home while the family attended the talent show. The affidavit provided, "Rocky left the car, climbed over a privacy fence and disappeared into the back yard. A short time later, I saw Rocky throw something over the fence and he climbed back over the fence as well. He picked up a white box approximately 2 foot by 2 foot and climbed into the front passenger seat. I was able to tell he had a white safe with him. Rocky said let's go and he asked me to drop him back off at the alley off of Liberty Street past Limestone Street. Rocky left with the safe. I went back to my home, went upstairs to the house and into the kitchen and got something to eat. Then I went to the bathroom, when I heard a knock on the front door of the house. * * * It was Tim Beverly and Edward McGuire, who came upstairs and asked me if I knew where the safe was and what had happened. I told him I didn't know what had happened, but saw Rocky with the safe that night * * * ."
 {¶ 7} Raymond also testified that he was unemployed, did not have a driver's license, and that he was struck by a car as a child and suffers from memory problems as a result. When asked if he had been convicted of a state or federal offense with a possible 12-month penalty, Raymond responded, "I ain't ever been — most ones I can remember is like six months maybe, 12 months; but I don't really remember anything past 12, nothing like that."
 {¶ 8} Trina Mee testified that she dated Raymond "for a week and a half or so," and that he told her that he threw the safe into Beaver Lake, next to the pump house. Lisa Poe testified that *Page 4 
testified that Raymond came to her house and had a safe in his car. According to Lisa, she accompanied Raymond to Beaver Lake and witnessed him throw the safe into the water there. Upon her return home, Lisa testified that she called the police. At trial, Raymond denied telling Trina and Lisa where the safe was.
 {¶ 9} Rocky asserts four assignments of error. His first assignment of error is as follows:
 {¶ 10} "APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 11} "When an appellate court analyzes a conviction under the manifest weight of the evidence standard it must review the entire record, weigh all of the evidence and all the reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (Internal citations omitted). Only in exceptional cases, where the evidence `weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." State v. Dossett, Montgomery App. No. 20997,2006-Ohio-3367.
 {¶ 12} "The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve."State v. DeHass (1997), 10 Ohio St.2d 230, 231, 227 N.E.2d 212. "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen *Page 5 
peculiar competence of the factfinder, who has seen and heard the witness." State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288. This court will not substitute its judgment for that of the trier of fact on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict.State v. Bradley (Oct. 24, 1997), Champaign App. No. 97-CA-03.
 {¶ 13} Rocky argues that Raymond's testimony was "so lacking in credibility that the `beyond a reasonable doubt' standard was not met," and he credits the testimony of Lisa Poe and Trina Mee over Raymond's. Rocky argues that Raymond is illiterate and unable to read most of the words in the affidavit he signed, rendering it unreliable. According to Rocky, the fact that Raymond lied when asked if the car he drove belonged to Tisha Payne indicates a propensity for falsification. Rocky further argues that Raymond's criminal history, and his willingness to drive without a license, indicate a lack of respect for the law, and that being unemployed provided an incentive for theft of the safe.
 {¶ 14} The jury had the opportunity to see and hear the witnesses, and the jury obviously believed Raymond, Tim, Kendra and Sabrina over Trina Mee and Lisa Poe. Raymond described Rocky's theft of the safe, and how he gave a statement regarding his observations to a detective, who then read the statement back to Raymond. Tim testified that Rocky knew where Tim kept his safe. In discussing their plans for the evening with Tim, Kendra let Rocky know that the family was going to be out of the home during the talent show. Sabrina testified that she observed Rocky walking through her home and looking at her kitchen window. Rocky needed money. We have reviewed the entire record, weighed the evidence and the reasonable inferences therefrom; that the jury chose to believe the State's version of events over Rocky's witnesses does not establish that the jury clearly lost its way, and the evidence before us does not weigh heavily against Rocky's *Page 6 
jury clearly lost its way, and the evidence before us does not weigh heavily against Rocky's conviction such that a new trial is warranted. Rocky's first assignment of error is overruled.
 {¶ 15} Rocky's second assignment of error is as follows:
 {¶ 16} "APPELLANT'S CONVICTION WAS AGAINST THE SUFFICIENCY OF THE EVIDENCE."
 {¶ 17} "In reviewing a claim of insufficient evidence,[t]he relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. McKnight, 107 Ohio St.3d 101, 112, 837 N.E.2d 315,2005-Ohio-6046 (Internal citations omitted).
 {¶ 18} Rocky was charged pursuant to R.C. 2911.(A)(2), which provides:
 {¶ 19} "(A) No person, by force, stealth, or deception, shall do any of the following:
 {¶ 20} * * *
 {¶ 21} "(2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense."
 {¶ 22} Rocky argues that the State failed to prove "the necessary element for the offense of Burglary that someone was present or likely to be present at the residence other than an accomplice."
 {¶ 23} We disagree. "`Although the term "likely" connotes something more than a mere possibility, it also connotes something less than a probability or reasonable certainty. A person is *Page 7 
A person is likely to be present when a consideration of all the circumstances would seem to justify a logical expectation that a person could be present.' (Internal citations omitted). In determining whether persons were present or likely to be present under R.C. 2911.12(A)(2), `the defendants knowledge concerning habitation is not material. The issue is not whether the burglar subjectively believed that persons were likely to be there, but whether it was objectively likely. (Internal citations omitted). Merely showing that people dwelled in the residence is insufficient; the state must adduce specific evidence that the people were present or likely to be present at the time of the burglary. (Internal citations omitted).
 {¶ 24} "The supreme court has held that the `likely to be present' element is satisfied where the structure is a permanent dwelling house which is regularly inhabited, the occupants were in and out of the house on the day in question, and the occupants were temporarily absent when the burglary occurred. State v. Kilby (1997), 50 Ohio St.2d 21, 23,361 N.E.2d 1336. On the other hand, courts have found insufficient evidence that the occupants were likely to be present when they were absent for an extended period, such as a vacation, and no one else was regularly checking on the house. (Internal citations omitted). Similarly, if the occupants of a house are gone for the entire work day, they are not `likely to be present' during the day." State v. Frock, Clark App. No. 2004 CA 76, 2006-Ohio-1254.
 {¶ 25} A consideration of the circumstances herein supports a logical expectation that someone could be present at the home; Tim, Kendra and Sabrina were in and out of the house on the day the burglary occurred, they were temporarily absent during the burglary (the talent show only lasted an hour to an hour and a half, and Kendra and Sabrina immediately returned home at *Page 8 
Sabrina immediately returned home at its conclusion), they were not on vacation and the burglary did not occur while they were out of their home for an entire workday. Viewing the evidence in a light most favorable to the State, any rational juror could have found that Rocky committed the burglary when the family was likely to be present beyond a reasonable doubt.
 {¶ 26} Rocky's second assignment of error is overruled.
 {¶ 27} Rocky's third assignment of error is as follows:
 {¶ 28} "APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION, AS WELL AS COMPARABLE PORTIONS OF THE OHIO CONSTITUTION."
 {¶ 29} In determining whether a defendant has received the effective assistance of tria counsel, we apply the standards set forth inStrickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id., at 686. "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction * * * has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a *Page 9 
result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable. Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable." Id., at 687.
 {¶ 30} "The Ohio Supreme Court has enunciated a similar test for determining claims for ineffective assistance of counsel:
 {¶ 31} 2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard or reasonable representation and, in addition, prejudice arises from counsel's performance. (Internal citations omitted).
 {¶ 32} 3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. (Internal citations omitted).
 {¶ 33} "In Strickland, supra, the Supreme Court instructed: `Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. (Internal citations omitted). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a *Page 10 
the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.' (Internal citations omitted). There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. (Internal citations omitted).
 {¶ 34} "The availability of intrusive post-trial inquiry into attorney performance or of detailed guidelines for its evaluation would encourage the proliferation of ineffectiveness challenges. Criminal trials resolved unfavorably to the defendant would increasingly come to be followed by a second trial, this one of counsel's unsuccessful defense. Counsel's performance and even willingness to serve could be adversely affected. Intensive scrutiny of counsel and rigid requirements for acceptable assistance could dampen the ardor and impair the independence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust between attorney and client.
 {¶ 35} "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process *Page 11 
make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.' Strickland,supra, at 689-690." State v. Lloyd (March 31, 1999), Montgomery App. No. 15927.
 {¶ 36} Rocky identifies four omissions on the part of defense counsel that he alleges constituted ineffective assistance, as indicated below.
A. Failure to Move to Dismiss the Indictment.
 {¶ 37} Rocky argues that "there is substantial reason to question the validity of the affidavit upon which [his] arrest was based" because Raymond did not understand the meaning of all of the words therein.
 {¶ 38} Applying a highly deferential scrutiny to defense counsel's performance, defense counsel's decision not to move to dismiss the indictment, knowing that he would be able to thoroughly cross-examine Raymond regarding the contents of the affidavit, and expose any lack of credibility to the jury, is not outside the wide range of professionally competent assistance. Defense counsel may not have wanted, for tactical reasons, to attack Raymond's credibility at a pretrial stage. Rocky's counsel did in fact cross-examine Raymond about the contents of his affidavit. In light of all the circumstances, Rocky has failed to overcome the strong presumption that defense counsel's decision regarding the indictment was sound trial strategy, and he accordingly failed to show that prejudice arose from counsel's performance, and that, had his counsel moved to dismiss the indictment, the outcome of the trial would have been different.
 B. Failure to Object to Speculative Testimony. *Page 12 
 {¶ 39} Rocky objects to the following testimony by Sabrina Bradley regarding Rocky walking through her home while Tim showered: "He might — I think he might have went in — he went into the kitchen, but I'm not sure if he went into my mom and dad's room. He might have." According to Rocky, this testimony "was prejudicial to Appellant, as it was based on speculation and permitted an inference that he might have been casing the room where the safe was located."
 {¶ 40} There was already evidence in the record that Rocky knew that a safe containing money was in Tim and Kendra's room. Whether or not to object to Sabrina's testimony that Rocky may have entered the bedroom the day of the burglary falls within the ambit of trial strategy. Sabrina did not state that Rocky entered the bedroom, only that she was unsure, but that he might have, suggesting that Sabrina was being careful not to overstate where Rocky wandered on the day of the burglary. Further, an objection to the tentative testimony of a ten year old child, under the circumstances, may have reflected negatively on Rocky. We cannot conclude, on the facts herein, that Rocky overcame the presumption that counsel's performance fell within the wide range of reasonable professional assistance, that counsel's failure to object prejudiced Rocky, and that the outcome of the trial would have been different if counsel had objected to Sabrina's testimony.
C. Failure to Object to the Prosecutor's Mischaracterization of Evidence.
 {¶ 41} Rocky points to the following exchange to show that Raymond failed to establish that Rocky retrieved a safe from the home, but that the prosecutor, instead, indicated that Rocky had taken a safe:
 {¶ 42} "Q. * * * When you next saw Rocky [after he climbed back over the fence at Tim and *Page 13 
Tim and Kendra's home], did he come to the car?
 {¶ 43} "A. Yes.
 {¶ 44} "Q. Was he carrying anything?
 {¶ 45} "A. Box.
 {¶ 46} "* * *
 {¶ 47} "Q. Did he get in the front seat with the box?
 {¶ 48} "A. Yes.
 {¶ 49} "* * *
 {¶ 50} "Q. [When Rocky later got out of the car did] he take the safe with him?
 {¶ 51} "A. Yes."
 {¶ 52} According to Rocky, "[t]his testimony was relevant and material to his guilt and should not have been allowed to stand unchallenged."
 {¶ 53} "A trial court has broad discretion to allow an attorney to ask leading questions of his own witness. (Internal citations omitted)."State v. Moore, Montgomery App. No. 20005, 2004-Ohio-3398. "`[T]he failure to object to leading questions will almost never rise to the level of ineffective assistance of counsel. There is no reason to object to leading questions that are intended to elicit routine or undisputed facts. These facts are clearly going to be established in any event, and leading questions may simply expedite the proceedings. Even if the testimony elicited involves disputed or controversial facts, experienced trial counsel may reasonably decide not to object." State v.Howard, Montgomery App. No. 20575, 2005-Ohio-3702.
 {¶ 54} It may have been a matter of strategy not to object, because if the objection had been sustained, the prosecutor could have simply rephrased the question or asked Raymond to *Page 14 
Raymond to describe the item Rocky carried. Raymond identified the item as a safe in his affidavit and would presumably do so again if questioned further. Whatever defense counsel's reasoning, there is no reasonable likelihood that the outcome of Rocky's trial would have been different if defense counsel had objected to the State's leading question.
D. Failure to Object to Prosecutor's Unfair Statement in Closing Argument.
 {¶ 55} Rocky alleges that he was prejudiced by the following statement by the State in closing regarding Raymond's affidavit: "And never was it suggested anything [Raymond] said was not true. He was just beaten up because he couldn't read or write." According to Rocky, "the statement was prejudicial as it unfairly suggested that the truthfulness of the affidavit was not an issue when it was. Further, the Prosecutor implied the Defense Counsel was beating up an individual in unfortunate circumstances for no good reason, unfairly casting the Defense in an unfavorable light."
 {¶ 56} "In analyzing claims of prosecutorial misconduct, `we must first determine whether the prosecutor's remarks were improper; if so, we then consider whether the remarks prejudicially affected substantial rights of the accused. We evaluate the allegedly improper statements in the context of the entire trial. An improper comment does not affect a substantial right of the accused if it is clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments.' (Internal citation omitted).
 {¶ 57} "Generally, prosecutors are entitled to considerable latitude in opening statement and closing argument. In closing argument, a prosecutor may comment freely on `what the evidence has shown and what reasonable inferences may be drawn therefrom.' `Moreover, because isolated instances of prosecutorial misconduct are harmless, the closing argument must be viewed *Page 15 
harmless, the closing argument must be viewed in its entirety to determine whether the defendant has been prejudiced.'" (Internal citation omitted). * * * Declining to object to a closing argument is often a reasonable tactical choice." Howard, supra.
 {¶ 58} After reviewing the entirety of the prosecutor's closing argument, and considering the remark at issue in the context of the entire trial, we find that, even if the prosecutor's remark was inappropriate, it was an isolated instance and harmless. Accordingly, we conclude that Rocky was not prejudiced by the prosecutor's remark, and that he was not denied effective assistance of counsel due to defense counsel's failure to object. In other words, it was a reasonable tactica choice not to object to an isolated, perhaps improper statement, and we conclude that there is no reasonable probability of a different outcome if defense counsel had objected the prosecutor's remark.
 {¶ 59} For the foregoing reasons, Rocky's third assignment of error is overruled.
 {¶ 60} Rocky's fourth assignment of error is as follows:
 {¶ 61} "APPELLANT WAS DENIED A FAIR TRIAL AND DUE PROCESS THROUGH PROSECUTORIAL MISCONDUCT."
A. Mischaracterization of Evidence.
 {¶ 62} Rocky argues that it was misconduct for the prosecutor, after Raymond indicated that Rocky carried a "box" from Tim and Kendra's home, to then ask Raymond if Rocky put a "safe" in the front seat of the car Raymond drove. A thorough review of the record reveals that the prosecutor's leading question regarding the safe, in the context of the entire trial, did not affect a substantial right of Rocky's, because it is clear beyond a reasonable doubt that the jury would have convicted Rocky of burglary without the improper question. *Page 16 
B. Prosecutor's Unfair Statement in Closing Argument.
 {¶ 63} As discussed above, the prosecutor's remark regarding Raymond's affidavit and his illiteracy was an isolated instance and harmless to Rocky. Rocky's fourth assignment of error is overruled.
Judgment affirmed.
 WOLFF, P.J. and GRADY, J., concur. *Page 1