[Cite as *State v. Lodwick*, 2018-Ohio-3710.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

STATE OF OHIO,                   :
                                 :        Case No.   17CA3812
        Plaintiff-Appellee,      :
                                 :
        vs.                      :        DECISION AND JUDGMENT
                                 :        ENTRY
CHRISTOPHER R. LODWICK,          :
                                 :
        Defendant-Appellant.     :        **Released: 09/14/18**
_____

APPEARANCES:

Matthew F. Loesch, Portsmouth, Ohio, for Appellant.

Shane A. Tieman, Scioto County Prosecuting Attorney, Portsmouth, Ohio, for Appellee.
_____

McFarland, J.

{¶1} This is an appeal from a Scioto County Court of Common Pleas judgment entry sentencing Appellant, Christopher Lodwick, to maximum and consecutive prison terms totaling eighteen years. He was found guilty by a jury of one count of burglary, a second-degree felony in violation of R.C. 2911.12(A)(2) and (D), and was determined by the trial court to be a repeat violent offender pursuant to R.C. 2941.149(A). On appeal, Appellant contends that 1) his conviction for second-degree felony burglary was against the manifest weight and sufficiency of the evidence and, as such, his

repeat violent offender specification fails as well; and 2) the trial court abused its discretion in sentencing him to the maximum time allowed by law in the instant case.

{¶2} Because we have concluded Appellant's argument simply challenges the sufficiency of the evidence and not the manifest weight of the evidence, and because Appellant's conviction for second-degree felony burglary was supported by sufficient evidence, we find no merit to the arguments raised in his first assignment of error. Thus, it is overruled. Further, because we have concluded the maximum sentence imposed by the trial court for Appellant's second-degree felony burglary conviction was supported by the record and was not contrary to law, we overrule Appellant's second assignment of error, in part. We likewise affirm the trial court's determination that Appellant was a repeat violent offender. However, because we have concluded the record fails to show any evidence that Appellant caused, threatened or attempted to cause serious physical harm to a person during the incident forming the basis for the burglary charge, the trial court's imposition of a ten-year maximum prison term, which was ordered to be served consecutively to the prison term imposed on the burglary conviction, was contrary to law. Thus, we find some merit to the second assignment of error raised by Appellant and it is sustained, in part.

{¶3} Based upon the foregoing, Appellant's conviction for second-degree felony burglary, as well as the eight-year maximum sentence imposed for that conviction are affirmed. However, because the ten-year maximum sentence imposed in connection with repeat violent offender determination is contrary to law, it must be reversed and vacated. Accordingly, the decision of the trial court is affirmed in part, reversed in part, and vacated in part.

FACTS

{¶4} Appellant, Christopher Lodwick, was indicted in the Scioto County Court of Common Pleas on May 12, 2017, for one count of burglary, a second-degree felony in violation of R.C. 2911.12(A)(1) and (D). The indictment also included a repeat violent offender specification pursuant to R.C. 2941.149. A superseding indictment was filed on September 5, 2017, amending the burglary count to charge a violation of R.C. 2911.12 (A)(2) and (D) rather than (A)(1) and (D). The charges in the indictment stemmed from an incident occurring on May 1, 2017, in which the home of Douglas Hood and Nikki Harris, located in Sciotoville, Ohio, was burglarized at approximately 9:30 in the morning on a week day.

{¶5} The matter proceeded to a jury trial on September 18, 2017. One of the victims, homeowner Douglas Hood, testified for the State. Mr.

Hood testified that he and his girlfriend Nikki Harris lived at the residence at issue and used it as their primary residence. He testified that although he was at work on the day in question, and that he usually is gone during weekdays from 7:30 a.m. to 3:00 p.m. attending his job as a teacher's aide, he sometimes comes home for lunch at 10:30 or 11:00 a.m. He also testified that he is free to come home if he needs to during the day, to get items he may have forgotten, which he does on occasion. He further testified Ms. Harris does not work and is usually home during the day, but that on the day in question she had left the house to attend a doctor's appointment not far from home, and had also stopped on her way home to pick up her new glasses. On cross examination, Mr. Hood testified he owns two cars, that they are usually parked in the driveway, and that neither car was present in the driveway on the day of the burglary.

{¶6} Mr. Hood further testified that he had just completed a call with Ms. Harris, where she advised him she was on her way home from the doctor but was stopping to pick up her glasses, when he received a notification on his mobile phone alerting him that his security cameras at home had detected movement inside his home. Upon reviewing the cameras he identified Appellant, who was his neighbor, as the person inside his home. Upon arriving at his house, Mr. Hood found that his front door had

been kicked in and multiple Crown Royal bags that had been filled with coins were missing. Those bags and coins were ultimately recovered by law enforcement in Appellant's residence.

{¶7} The jury found Appellant guilty of second-degree felony burglary, as charged in the indictment, and then the trial court, after receiving additional testimony and evidence regarding Appellant's criminal history, determined Appellant was a repeat violent offender. The trial court thereafter sentenced Appellant to an eight-year maximum prison term on the burglary conviction, sentenced him to a ten-year maximum prison term on the repeat violent offender specification, and ordered the sentences to be served consecutively for an aggregate prison sentence of eighteen years. Appellant now appeals his conviction and sentences, setting forth two assignments of error for our review.

ASSIGNMENTS OF ERROR

"I.     APPELLANT'S CONVICTION FOR FELONY 2 BURGLARY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND SUFFICIENCY OF THE EVIDENCE AND AS SUCH APPELLANT'S REPEAT VIOLENT OFFENDER SPECIFICATION WOULD FAIL AS WELL.

II.     THE TRIAL COURT ABUSED ITS DISCRETION IN SENTENCING APPELLANT TO THE MAXIMUM TIME ALLOWED BY LAW IN THE INSTANT CASE."

ASSIGNMENT OF ERROR I

{¶8}  In his first assignment of error, Appellant contends that his conviction for second-degree felony burglary was against the manifest weight of the evidence and was not supported by sufficient evidence.  He further contends that because the State failed to sufficiently prove he committed second-degree felony burglary, as opposed to third-degree felony burglary, the repeat violent offender specification fails as well.  The State contends that it presented evidence sufficient for the jury to find Appellant guilty of second-degree felony burglary and, in light of Appellant's criminal history which includes three additional second-degree felony burglary convictions in the preceding twenty years, the repeat violent offender specification was applicable and appropriate.

{¶9}  "When a court reviews a record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 146; quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991); *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979). "The court must defer to the trier of fact on questions of credibility and the

weight assigned to the evidence." *State v. Dillard*, 4th Dist. Meigs No. 13CA9, 2014-Ohio-4974, ¶ 27; citing *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 132.

{¶10} In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119. Further, "[w]hen an appellate court concludes that the weight of the evidence supports a defendant's conviction, this conclusion necessarily also includes a finding that sufficient evidence supports the conviction." *State v. Adkins*, 4th Dist. Lawrence No. 13CA17, 2014-Ohio-3389, ¶ 27.

{¶11} Appellant was convicted of burglary, a second-degree felony in violation of R.C. 2911.12(A)(2) and (D). R.C. 2911.12 provides, in pertinent part, as follows:

> "(A) No person, by force, stealth, or deception, shall do any of the following:
>
> * * *

(2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or *likely to be present*, with purpose to commit in the habitation any criminal offense;

* * *

(D) Whoever violates division (A) of this section is guilty of burglary. A violation of division (A)(1) or (2) of this section is a felony of the second degree. A violation of division (A)(3) of this section is a felony of the third degree." (Emphasis added).

**{¶12}** A repeat violent offender specification was also contained in the indictment filed against Appellant and after being found guilty of the second-degree felony burglary charge by the jury, the trial court determined that Appellant was a repeat violent offender. The relevant version of R.C. 2929.01(CC)(1)(a) defines a "repeat violent offender" as follows:

"(CC) 'Repeat violent offender' means a person about whom both of the following apply:

(1) The person is being sentenced for committing or for complicity in committing any of the following:

(a) Aggravated murder, murder, *any felony of the first or second degree that is an offense of violence*, or an attempt to commit any of these offenses if the attempt is a felony of the first or second degree." (Emphasis added).

* * *

(2) The person previously was convicted of or pleaded guilty to an offense described in division (CC)(1)(a) or (b) of this section."[1]

{¶13} Further, R.C. 2941.149, entitled "Specification concerning repeat violent offenders," provides, in pertinent part, as follows:

"(A) The determination by a court that an offender is a repeat violent offender is precluded unless the indictment, count in the indictment, or information charging the offender specifies that the offender is a repeat violent offender. The specification shall be stated at the end of the body of the indictment, count, or information, and shall be stated in substantially the following form:

'SPECIFICATION (or, SPECIFICATION TO THE FIRST COUNT). The Grand Jurors (or insert the person's or prosecuting attorney's name when appropriate) further find and specify that (set forth that the offender is a repeat violent offender).' "

{¶14} Here, the repeat violent offender specification was properly included in the indictment, as well as the superseding indictment, as required by R.C. 2941.149. Appellant only argues the repeat violent offender determination fails to the extent this Court reverses his conviction for second-degree felony burglary. Further, it appears Appellant conceded during trial, and now concedes on appeal, that there was sufficient evidence to convict him of third-degree felony burglary. In fact, Appellant argued for and received a lesser-included offense instruction based upon 1) the fact that

---

[1]The second-degree burglary charge of which Appellant was convicted is defined as an "offense of violence" in R.C. 2901.01(A)(9)(a), as were Appellant's three prior burglary convictions.

no one was present during the burglary; and 2) his contention that the State failed to prove that someone was likely to be present, which is a requirement to establish second-degree felony burglary, as opposed to third-degree felony burglary.

{¶15} This Court was presented with a similar argument regarding the "likely to be present" element required to be proven for second-degree felony burglary in *State v. Griffith*, 4th Dist. Pickaway No. 17CA4, 2017-Ohio-8855. Initially we note that in *Griffith*, we determined that an argument that the State failed to prove anyone was "present or likely to be present" at the victims' home at the time of the offense in essence challenges the sufficiency of the evidence and not the weight of the evidence. *Id.* at ¶ 4 and ¶ 34. We are faced with the same limited argument here. Thus, our analysis under Appellant's first assignment of error is limited to a determination of whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

{¶16} In *Griffith*, the victim (West) and his family left their house at separate times on the day of the burglary with a plan to camp in an adjacent county for the weekend. *Griffith* at ¶ 8. However, on the evening of the first day of the camping trip, the victim decided to drive back to his house to

check on the house and take a shower. *Id.* at ¶ 9. When he arrived home, the

victim was able to view, through a panel in the front door, Griffith (who was

his next door neighbor) inside the house. *Id.* This Court upheld Griffith's

conviction for second-degree felony burglary, finding that the State

sufficiently proved someone was likely to present in the house at the time of

the burglary. *Id*. at ¶ 38.

> **{¶17}** In reaching our decision, we reasoned as follows:

> " 'In determining what constitutes sufficient proof that a person
> is "likely to be present," the Ohio Supreme Court held the
> [S]tate meets its burden if it presents evidence 'that an occupied
> structure is a permanent dwelling house which is regularly
> inhabited, that the occupying family was in and out on the day
> in question, and that such house was burglarized when the
> family was temporarily absent[.] " ' *State v. Edwards*, 4th Dist.
> Jackson No. 06CA5, 2006–Ohio–6288, ¶ 12, quoting *State v.
> Kilby*, 50 Ohio St.2d 21, 361 N.E.2d 1336 (1977), paragraph
> one of the syllabus (construing former R.C. 2911.11(A)(3)); *see
> also State v. Fowler,* 4 Ohio St.3d 16, 19, 445 N.E.2d 1119
> (1983). 'The Court in *Kilby* stated that the "likely to be present"
> requirement is intended to target "the type and use of the
> occupied structure and not literally whether individuals will be
> home from work or play at a particular time." ' *Id*., quoting
> *Kilby* at 25–26."

As a result, we determined in *Griffith*, based upon the facts before us, as

follows:

> " * * * the jury was free to infer from the evidence that the
> West family was likely to be present at their home at the time of
> the burglary. The State presented evidence that the occupied
> structure was the permanent dwelling house of the West family,
> who regularly inhabited it; that the Wests were in and out of the

house on the day in question and temporarily absent when their home was burglarized, with Mr. West returning as the offense was occurring. There is no evidence that they were regularly gone from home for an extended period of time or were routinely absent from the home at the time the burglary occurred. *Accord, Edwards* at ¶ 13."

{¶18} The First District Court of Appeals also recently considered a case involving the question of whether anyone was "likely to be present" at the time of a burglary. *State v. Braden*, --- N.E.3d ---, 2018-Ohio-563. The *Braden* court explained as follows in considering the question of whether someone is likely to present in the context of the commission of a burglary offense:

"The issue is not whether the burglar subjectively believed that persons were likely to be there, but whether it was objectively likely." *State v. Cravens*, 1st Dist. Hamilton No. C–980526, 1999 WL 567098, *1 (June 25, 1999). This court has held that "objectively likely to be present" means the "probability or improbability of actual occupancy which in fact exists at the time of the offense, determined by all the facts surrounding the occupancy." *In re Meatchem*, 1st Dist. Hamilton No. C-050291, 2006-Ohio-4128, 2006 WL 2320787, ¶ 16. "That is, there must be a greater than 50% likelihood that someone will be in the dwelling at the time of the burglary." *Id.* at ¶ 17.

{¶19} The court's analysis included a detailed list of cases providing examples of fact patterns leading to either affirmances or reversals of findings that someone was, or was not, "likely to be present." For instance, the *Braden* court stated as follows:

"Ohio courts have decided a number of cases describing the type of evidence that the state can offer to establish the 'likely to be present' element. *See, e.g., State v. Kilby*, 50 Ohio St.2d 21, 361 N.E.2d 1336 (1977) (likely to be present element satisfied where home's occupants were across the street at a neighbor's house); *State v. Weber*, 10th Dist. Franklin No. 97APA03–322, 1997 WL 798299 (Dec. 23, 1997) (likely to be present element satisfied where home owners were away on vacation, but others had permission to be in the house and neighbor was watching property while owners were absent); *State v. Beverly*, 2d Dist. Clark No. 2005 CA 85, 2007-Ohio-1028, 2007 WL 706806 (likely to be present element satisfied where occupants were away from the house for about one and a half hours during the evening); *State v. Young*, 8th Dist. Cuyahoga No. 87613, 2006-Ohio-5723, 2006 WL 3095685 (likely to be present element satisfied where evidence showed that occupants did not work on weekends, and burglary occurred on a Sunday); *State v. Baker*, 12th Dist. Butler No. CA2003-01-016, 2003-Ohio-5986, 2003 WL 22532913 (likely to be present element satisfied where occupant was a retiree with no fixed schedule); *State v. Palmer*, 8th Dist. Cuyahoga No. 89957, 2008-Ohio-2937, 2008 WL 2424455 (likely to be present element satisfied where evidence established burglary occurred close to the time occupants would have left for work). Critically, where the occupants of a house are almost always absent as part of their fixed work schedule, they are not likely to be present during their regular working hours. *See, e.g., State v. Frock*, 2d Dist. Clark No. 2004 CA 76, 2006-Ohio-1254, 2006 WL 677715 (likely to be present element not satisfied where occupant regularly came home from work to walk her dog around 2 p.m., and burglary occurred between 1:00 p.m. and 1:30 p.m.); *State v. Brown*, 1st Dist. Hamilton No. C–980907, 2000 WL 492054 (Apr. 28, 2000) (likely to be present element not satisfied where burglary occurred during the occupant's workday, and no evidence was offered that the occupant ever came home during his workday); *State v. Lockhart*, 115 Ohio App.3d 370, 685 N.E.2d 564 (8th Dist.1996) (likely to be present element not satisfied where home's occupant testified that burglary occurred while she was

at work, and that she did not return to her house at varying times).” *Braden* at ¶ 11-12.

**{¶20}** Here, the evidence presented by the State demonstrated that the victims, Douglas Hood and Nikki Harris, lived in a house located at 5531 Wilson Avenue, Sciotoville, Ohio and used that house as their primary residence. The State presented the testimony of Hood which explained that he typically works from 7:30 a.m. to 3:00 p.m at CAPE Alternative School, which is located approximately ten minutes from his home. Mr. Hood testified that though he is typically at work during those hours, he is free to leave work at lunch, which he sometimes does between 10:30 and 11:00 a.m. He also testified that he is free to leave work and come home any time during his work day, if he needs to run an errand or has forgotten something at home. Importantly, Hood also testified that his girlfriend, Nikki Harris, does not work and is usually home during the day. He testified that the only reason she was not present on the day of the burglary was because she had gone to a doctor’s appointment in Portsmouth, Ohio, which is located only a short distance from their home, and had stopped on the way home to pick up her new glasses. Appellant provided no evidence to refute Hood’s testimony, but was able, upon cross-examination of Hood, to establish that Hood owned two cars, which were usually parked in the driveway, and that both cars were gone at the time of the burglary.

{¶21} Based upon the above testimony offered at trial by the State, we believe the State sufficiently proved that Hood and Harris used the residence at issue as their primary dwelling and regularly inhabited it. Further, the evidence presented by the State demonstrated that Nikki Harris was usually home at the time of the burglary, but that she was in and out on the day in question and was temporarily absent at the time Appellant committed the burglary. There is no evidence indicating Harris was gone from home for an extended period of time or was routinely absent from the home at the time the burglary occurred. Thus, we conclude the jury's determination that someone was likely to be present in the residence at the time of the burglary was supported by sufficient evidence.

{¶22} In reaching our decision, we reject Appellant's argument suggesting that because there were no vehicles in the driveway, it was reasonable to conclude the house was "entirely vacant during the course of the burglary." The evidence introduced at trial indicated Appellant was the next door neighbor of the victims, that the victims had two cars, and that neither car was in the driveway at the time of the burglary. However, even if Appellant subjectively thought no one would be present in the home, as set forth above, "[t]he issue is not whether the burglar subjectively believed that persons were likely to be there, but whether it was objectively likely." *State*

*v. Braden, supra,* at ¶ 17; quoting *State v. Cravens, supra,* at *1.[2]  Based upon the testimony of Hood, it was objectively likely that Nikki Harris was likely to be present in the residence at the time of the burglary, as she used the residence as her primary dwelling, she did not work, she had not been gone from the residence for an extended period of time, she was not routinely absent from the home at the time of the burglary, and she was in and out and only temporarily absent at the time the burglary occurred.  As such, in our view, the State met it burden.  Thus, we find no merit in this argument raised under Appellant's first assignment of error and therefore affirm Appellant's conviction for second-degree felony burglary.

{¶23}  Appellant further argues that the trial court erred in determining he was a repeat violent offender.  His argument is solely based upon the premise that his conviction for second-degree felony burglary should be reversed.  Consequently, because we have affirmed, rather than reversed, that conviction, Appellant's arguments regarding the trial court's repeat violent offender determination are without merit.  However, as will be discussed more fully below under Appellant's second assignment of error, although we find the trial court properly classified Appellant as a repeat

---

[2] Here, there was no evidence introduced at trial indicating what Appellant subjectively thought one way or another regarding whether anyone was present or likely to be present at the time of the burglary.  Appellant did not testify or present any other evidence during trial.  Further, only the statements of defense counsel serve as the basis for the suggestion that because no cars were in the driveway, Appellant would have thought the home was vacant.  Statements by counsel, of course, are not evidence.

violent offender, the sentence imposed in connection with that classification is contrary to law and must be reversed and vacated.

ASSIGNMENT OF ERROR II

{¶24} In his second assignment of error, Appellant contends that the trial court abused its discretion in sentencing him to the maximum time allowed by law. As set forth above, Appellant was sentenced to an eight-year maximum prison term for his second-degree felony burglary conviction and he was sentenced to a ten-year maximum prison term on the repeat violent offender specification. The trial court further ordered that these sentences be served consecutively resulting in an aggregate prison sentence of eighteen years. The State contends the trial court did not abuse its discretion in sentencing Appellant, and further contends that Appellant's sentence was not contrary to law.

{¶25} We must initially note that we reject Appellant's argument that we review a trial court's imposition of felony sentences using the abuse-of-discretion standard of review. In *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 10, the court held "that appellate courts may not apply the abuse-of-discretion standard in sentencing-term challenges." *Accord State v. Campbell*, 4th Dist. Adams No. 15CA1012, 2016-Ohio-415, ¶ 11. Additionally, R.C. 2953.08(G)(2) explicitly states that

an "appellate court's standard for review [when considering sentencing-term challenges] is not whether the sentencing court abused its discretion." Instead, the statute states that reviewing courts may increase, reduce, modify, or vacate and remand a challenged felony sentence if the court clearly and convincingly finds either that (1) "the record does not support the sentencing court's findings" under certain statutory provisions, or (2) "the sentence is otherwise contrary to law." *Accord State v. Pulliam*, 4th Dist. Scioto No. 16CA3759, 2017-Ohio-127, ¶ 6; *State v. Perry*, 4th Dist. Pike No. 16CA863, 2017-Ohio-69, ¶ 13. Thus, Appellant's assertion that we apply the abuse-of-discretion standard when reviewing trial court felony sentencing decisions is incorrect.

{¶26} Appellant argues the trial court was required to state its reasons for imposing maximum and consecutive sentences, and that it appears the trial court's sole reason for sentencing Appellant to maximum sentences was due to his criminal history, which Appellant contends is insufficient to impose maximum sentences. Appellant also references the fact that the trial judge commented on the fact that he himself had been a victim of theft offenses, and argues such comments can be construed as evidence the sentence imposed by the trial court was vindictive. Appellant also cites the fact that there was no physical harm or threat of harm in this case, and states

that he simply committed a crime of opportunity to fuel his drug habit,
noting his long history of substance abuse. Appellant concedes that the trial
court recited "boilerplate sentencing language prior to imposing the
maximum[,]" but argues "it does not appear that the trial court truly took the
sentencing factors into consideration."

{¶27} We initially consider the eight-year maximum prison term
imposed on the burglary conviction. As set forth above, we affirmed
Appellant's conviction for second-degree felony burglary, which included,
as an element of the offense, that someone was either present, or likely to be
present, when the burglary occurred. The fact that no one was present when
the burglary occurred in this case was merely fortuitous, as Nikki Harris,
though usually at home, happened to be away at a doctor's appointment at
the time the burglary was committed. In our view, such fortune should not
inure to the benefit of Appellant or result in a more lenient sentence.
Further, the record before us indicates that aside from the burglary at issue
herein, Appellant had been previously convicted of three counts of second-
degree felony burglary, one count of third-degree felony attempted burglary,
and one count of fifth-degree felony attempted burglary. As such, Appellant
has a lengthy criminal history and a propensity for committing burglaries.

**{¶28}** Here, it appears that the sentence Appellant received on the second-degree felony burglary conviction was within the statutory range for the offense, and thus it cannot be said that the length of the sentence is contrary to law. Further, and importantly, maximum sentences do not require specific findings. *State v. McClain*, 4th Dist. Pickaway No. 13CA17, 2014–Ohio–4192, ¶ 36; *State v. Lister*, 4th Dist. Pickaway No. 13CA15, 2014–Ohio–1405, ¶ 10; citing *State v. White*, 2013–Ohio–4225, 997 N.E.2d 629, ¶ 7 (1st Dist.). Although trial courts have full discretion to impose any term of imprisonment within the statutory range, they must consider the sentencing purposes in R.C. 2929.11 and the guidelines contained in R.C. 2929.12. *Lister, supra,* at ¶ 14. H.B. 86 amended R.C. 2929.11 and states:

> "(A) A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both."

R.C. 2929.12 also provides a non-exhaustive list of factors a trial court must consider when determining the seriousness of the offense and the likelihood that the offender will commit future offenses. *Lister, supra,* at ¶ 15.

{¶29} While the trial court is required to consider the R.C. 2929.12 factors, "the court is not required to 'use specific language or make specific findings on the record in order to evince the requisite consideration of the applicable seriousness and recidivism factors (of R.C. 2929.12.)' " *State v. Latimer*, 11th Dist. Portage No. 2011–P–0089, 2012–Ohio–3745, ¶ 18; quoting *State v. Webb*, 11th Dist. Lake No. 2003–L–078, 2004–Ohio–4198, ¶ 10; quoting *State v. Arnett*, 88 Ohio St.3d 208, 215, 724 N.E.2d 793 (2000). The Supreme Court of Ohio in *State v. Adams*, 37 Ohio St.3d 295, 525 N.E.2d 1361 (1988), has held: "[a] silent record raises the presumption that a trial court considered the factors contained in R.C. 2929.12." *Latimer, supra;* quoting *Adams* at paragraph three of the syllabus. Further, "[a] maximum sentence is not contrary to law when it is within the statutory range and the trial court considered the statutory principles and purposes of sentencing as well as the statutory seriousness and recidivism factors." *State v. Talley*, 74 N.E.3d 868, 2016–Ohio–8010, ¶ 15 (2nd Dist.).

{¶30} A review of the record reveals that although the trial court did not specifically state its reasons for imposing a maximum sentence on the burglary conviction, it expressly stated its consideration of the required principles and purposes of felony sentences. Further, in addition to enumerating the applicable sentencing statutes and factors, the trial court

engaged in an on-the-record colloquy with Appellant regarding his extensive criminal history, the fact that the court had given him multiple chances and that Appellant had been offered multiple treatment options in the past, including while he was previously in prison, but that he continued to re-offend. Based on the foregoing, it is clear that the trial court appropriately considered the principles and purposes of felony sentences, as set forth in R.C. 2929.11, including the seriousness and recidivism factors contained in R.C. 2929.12, as well as the record before it, which included Appellant's extensive criminal history and recidivism. Thus, the trial court's imposition of this maximum sentence is supported by the record, and is not clearly and convincingly contrary to law.

{¶31} We must next consider the ten-year maximum prison term imposed as a result of the repeat violent offender determination made by the trial court, which was ordered to be served consecutively to the prison term imposed on the burglary conviction. As set forth above, the indictment herein contained a repeat violent offender specification pursuant to R.C. 2941.149(A). Without going into more detail than necessary, the specification alleged Appellant had previously been convicted of three second-degree felony counts of burglary, one third-degree felony count of attempted burglary and one fifth-degree felony count of attempted burglary,

all occurring between the years 2003 and 2012. Further, after the jury found

Appellant guilty of the current second-degree burglary count contained

herein, the State introduced evidence through Investigator Charles and

introduced as exhibits certified copies of each of the convictions. However,

there was no testimony or other evidence introduced by the State regarding

any serious physical harm to a person which actually occurred or was

attempted or threatened in connection with the current burglary charge or the

prior burglary convictions. Ultimately, the trial court determined Appellant

was a repeat violent offender and sentenced him to a ten-year maximum

prison term.

{¶32} Once again, the relevant version of R.C. 2929.01(CC)(1)(a)

defines a "repeat violent offender" as follows:

> "(CC) 'Repeat violent offender' means a person about whom both of
> the following apply:
>
> (1) The person is being sentenced for committing or for
> complicity in committing any of the following:
>
> (a) Aggravated murder, murder, *any felony of the first or
> second degree that is an offense of violence*, or an attempt
> to commit any of these offenses if the attempt is a felony of
> the first or second degree." (Emphasis added).
>
> * * *

(2) The person previously was convicted of or pleaded guilty to an offense described in division (CC)(1)(a) or (b) of this section."[3]

**{¶33}** Further, R.C. 2929.14 governs felony sentencing and prison terms and provides in section (B)(2)(b)(i-iii), as follows with respect to the imposition of a prison sentence for a repeat violent offender:

"(b) The court shall impose on an offender the longest prison term authorized or required for the offense and shall impose on the offender an additional definite prison term of one, two, three, four, five, six, seven, eight, nine, or ten years *if all of the following criteria are met*:

(i) The offender is convicted of or pleads guilty to a specification of the type described in section 2941.149 of the Revised Code that the offender is a repeat violent offender.

(ii) The offender within the preceding twenty years has been convicted of or pleaded guilty to three or more offenses described in division (CC)(1) of section 2929.01 of the Revised Code, including all offenses described in that division of which the offender is convicted or to which the offender pleads guilty in the current prosecution and all offenses described in that division of which the offender previously has been convicted or to which the offender previously pleaded guilty, whether prosecuted together or separately.

(iii) The offense or offenses of which the offender currently is convicted or to which the offender currently pleads guilty is aggravated murder and the court does not impose a sentence of death or life imprisonment without parole, murder, terrorism and the court does not impose a sentence of life imprisonment

---

[3] This version of the statute became effective on August 3, 2006, and the pertinent language was still in effect at the time of Appellant's sentence and remains in effect today. Prior to August 3, 2006, in order to be classified as a repeat violent offender, there had to be a finding that the second-degree felony at issue "involved an attempt to cause serious physical harm to a person or that resulted in serious physical harm to a person." This is in contrast to the applicable version of the statute which simply required the second-degree felony at issue, here burglary, be an "offense of violence."

without parole, any felony of the first degree that is an offense of violence and the court does not impose a sentence of life imprisonment without parole, *or any felony of the second degree that is an offense of violence and the trier of fact finds that the offense involved an attempt to cause or a threat to cause serious physical harm to a person or resulted in serious physical harm to a person*." (Emphasis added).[4]

**{¶34}** Here, Appellant was convicted of a specification described in R.C. 2941.149. Further, as noted above, burglary is defined as an "offense of violence" in R.C. 2901.01(A)(9)(a). Additionally, the record demonstrates Appellant had been convicted of three second-degree felony burglary offenses of violence in the preceding twenty years. However, as noted by Appellant and as discussed above, in the present case there is no evidence in the record demonstrating the trier of fact found, with respect to the second-degree felony burglary conviction presently at issue, "that the offense involved an attempt to cause or a threat to cause serious physical harm to a person or resulted in serious physical harm to a person" as required by R.C. 2929.14(B)(2)(b)(iii). Nor would the record before us have supported such a finding. Here, the statute clearly requires that not only must the offense at issue be an "offense of violence," but there must also be a serious physical harm finding by the trier of fact. Again, there was no such finding made in the present case.

---

[4] The language requiring the "trier of fact" to find that "the offense involved an attempt to cause or a threat to cause serious physical harm to a person or resulted in serious physical harm to a person" was added to the statute by 2006-H-95, effective August 3, 2006.

{¶35}  In *State v. Sims*, 8th Dist. Cuyahoga No. 84090, 2005-Ohio-1978, the court determined that Sims could not be classified as a repeat violent offender where the record failed to show any evidence that he caused or attempted to cause serious physical harm during, either the incident forming the basis for the burglary charge or in either of his prior convictions. Notably, at the time *Sims* was decided, the version of R.C. 2929.01 that was in effect at that time included language that the second-degree felony conviction at issue must involve "an attempt to cause serious physical harm to a person or that resulted in serious physical harm to a person" in order to be classified as repeat violent offender."[5]  Thus, without any evidence of physical harm in the record, the *Sims* court found that the trial court erred not only in imposing an additional penalty upon Sims as a repeat violent offender, but also in classifying him as a repeat violent offender.

{¶36}  As indicated above, however, after *Sims* was decided the definition of "repeat violent offender" changed.  Here, in order for Appellant to be classified as a repeat violent offender, it was necessary for the trial court to find that he was being sentenced for committing a felony of the "second degree that is an offense of violence * * *[.]"  In contrast to *Sims*, there was no requirement, under the version of R.C. 2929.01 that was in

---

[5] Former version of R.C. 2929.01(DD) contained the definition of "repeat violent offender," which is now contained in R.C. 2929.01(CC).

effect at time of Appellant's sentencing, that the trial court find Appellant also caused, attempted or threatened to cause serious physical harm to person before it could determine he was a "repeat violent offender" within the meaning of the statute. Thus, it appears the trial court's classification of Appellant as a repeat violent offender was proper. However, it also appears that in order to impose an additional penalty in the form of a prison sentence upon a repeat violent offender, R.C. 2929.14 now requires not only that the offense at issue be an "offense of violence" but also that there be a finding, by the trier of fact for the felony conviction, that "the offense involved an attempt to cause or a threat to cause serious physical harm to a person or resulted in serious physical harm to a person." R.C. 2929.14(B)(2)(b)(iii).[6]

{¶37} This case involved the burglary of a house where ultimately no one was present, with the intent to commit a theft offense therein, which resulted in the theft of several bags of coins. The elements of burglary do not include actual, attempted or threatened serious physical harm to a person. Further, the jury made no special finding of actual, attempted or threatened serious physical harm to a person here. Thus, the trial court erred in imposing a prison term in connection with the repeat violent offender classification. *See State v. Davis*, 7th Dist. Mahoning No. 08 MA 152, 2009-

---

[6] This requirement was added to the version of R.C. 2929.14 with an effective date of August 3, 2006 and remains a requirement in the version of the statute in effect at the time of Appellant's sentencing and still today.

Ohio-5079, ¶ 31-36 (reversing enhanced sentencing for a repeat violent offender specification following a conviction for second-degree robbery where the jury was not instructed to make a finding as to whether the harm involved was serious; nor did the jury make such a finding.)

{¶38} Accordingly, Appellant's conviction for second-degree felony burglary is affirmed as is his eight-year maximum prison sentence for that conviction. Further, although Appellant was properly classified as a repeat violent offender under R.C. 2929.01(CC) by the trial court, the sentence imposed for that classification was contrary to law. This is because the trier of fact did not find that the offense involved an attempt to cause or a threat to cause serious physical harm to a person, or resulted in serious physical harm to a person. Thus, Appellant's repeat violent offender determination is affirmed but the ten-year maximum prison term imposed as a result is contrary to law and is, therefore, reversed and vacated.

**JUDGMENT AFFIRMED IN PART, REVERSED IN PART AND VACATED IN PART**.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED IN PART, REVERSED IN PART, AND VACATED IN PART. Costs shall be divided equally between Appellant and Appellee.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. & Abele, J.: Concur in Judgment and Opinion.

For the Court,

BY: _____
Matthew W. McFarland

### NOTICE TO COUNSEL
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**