[Cite as *State v. Dillard*, 2014-Ohio-4974.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
MEIGS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 13CA9 |
| Plaintiff-Appellee, | : | |
| v. | : | DECISION AND JUDGMENT ENTRY |
| EMILY DILLARD, | : | |
| Defendant-Appellant. | : | **RELEASED: 11/5/2014** |

APPEARANCES:

Timothy Young, Ohio Public Defender, and Stephen A. Goldmeier, Ohio Assistant Public Defender, Columbus, Ohio, for appellant.

Colleen S. Williams, Meigs County Prosecuting Attorney, and Jeremy L. Fisher, Meigs County Assistant Prosecuting Attorney, Pomeroy, Ohio, for appellee.

Harsha, J.

{¶1}  Following a trial the jury convicted Emily Dillard of illegal manufacturing of drugs, illegal assembly or possession of chemicals for the manufacture of drugs, and endangering children, and the court sentenced her to prison.

{¶2}  On appeal Dillard claims that the trial court erred when it allowed Sergeant Bill Gilkey of the Meigs County Sheriff's Office to testify regarding logs of her purchases of pseudoephedrine, a chemical used in the production of methamphetamine.  Dillard contends that Sgt. Gilkey's testimony should have been excluded because the state did not disclose his name as a witness in pretrial discovery.  However, the trial court did not abuse its broad discretion in refusing to exclude Sgt. Gilkey's testimony because exclusion of evidence is a remedy of last resort.  The state's failure to disclose Sgt. Gilkey's name was not a willful violation of the rule, knowledge of his name would not

have benefited Dillard in the preparation of her defense, nor was Dillard unfairly

prejudiced.  The state had already provided the report containing logs of her purchases

of pseudoephedrine to Dillard in discovery. Moreover, she declined an offer to interview

Sgt. Gilkey before his testimony or to seek a continuance of the trial.  We reject Dillard's

first assignment of error.

{¶3}    In her second assignment of error Dillard contends that her convictions

are not supported by sufficient evidence.  In her third assignment of error she contends

that her convictions are against the manifest weight of the evidence.  The state

introduced evidence that: Dillard purchased pseudoephedrine, a chemical used in the

manufacturing of methamphetamine; Dillard resided with her four-year-old child in her

father's home; a consent search revealed a partial methamphetamine lab consisting of

a bottle containing water and brown sand in the bathroom and an active

methamphetamine lab with smoke coming from it in a unlocked storage room.  Based

on this evidence, the jury properly found the essential elements of the crimes proven

beyond a reasonable doubt and did not clearly lose its way or create a manifest

miscarriage of justice.  We reject Dillard's second and third assignments of error.

{¶4}    In her fourth assignment of error Dillard asserts that the trial court erred

when it entered a judgment of conviction against Dillard for third-degree-felony child

endangering in violation of her due-process rights. Although the state agrees with

Dillard's claim, the trial court did not violate R.C. 2945.75(A)(2) by convicting Dillard of

felony child endangering because the jury verdict form specified that she was guilty of

violating R.C. 2919.22(B)(6), which supports at least a third-degree-felony conviction.

Because there were no aggravating elements necessary to enhance the penalty to a

felony, R.C. 2945.75(A)(2) did not apply and the jury's verdict form was sufficient to convict Dillard of a third-degree felony for child endangering under R.C. 2919.22(B)(6). Consequently, we overrule Dillard's fourth assignment of error.

{¶5}    We affirm Dillard's convictions and sentence.

## I. FACTS

{¶6}    Sgt. Danny Leonard of the Meigs County Sheriff's Office and Meigs County Children Services Investigator Candace Walker responded to a report of an active methamphetamine lab in a home where children were present.  After they knocked on the door of the home, which was owned by Dillard's father, David, Dillard answered the door and let them search the premises.  They found a partial methamphetamine lab consisting of a bottle with liquid and lithium battery residue sitting in plain view in a bathroom.  The bottle was within the reach of Dillard's four-year old child, who was present in the home.  Dillard claimed that the bottle contained water and sand from the creek where her children had been playing.

{¶7}    In an unlocked storage room in the home, Sgt. Leonard and Walker discovered an active methamphetamine lab, which was emitting smoke.  Materials used to manufacture methamphetamine were present in the storage room and around the home.  They found Dillard's father asleep in his bedroom and after taking about 30 minutes to awaken him, they escorted him and the others out of the home.

{¶8}    Dillard informed Sgt. Leonard that she lived at her father's home, and she also listed the home as one of her residences to her parole officer.  According to Sgt. Gilkey, he accessed logs and generated a report indicating that Dillard had purchased medications containing a total of 8.4 grams of pseudoephedrine over a period from

March 2011 to July 2012, with the two last purchases on June and July 2012, shortly before the August 1, 2012 discovery of the methamphetamine labs.

{¶9}   A Meigs County grand jury returned an indictment charging Dillard with illegal manufacture of methamphetamine, illegal assembly or possession of chemicals for manufacture of methamphetamine, and endangering children, all felonies.  Following trial the jury returned verdicts finding Dillard guilty of all the charges.  The trial court imposed an aggregate prison term of ten years.

## II. ASSIGNMENTS OF ERROR

{¶10}  Dillard appealed and assigns the following errors for our review:

1. The trial court erred when it allowed Sergeant Bill Gilkey to testify regarding the pseudoephedrine logs, when the State failed to timely notify defense counsel before trial that he would testify.  Crim.R. 16(I). (V.1 at 96-101, 192-214)

2. Ms. Dillard's convictions are not supported by sufficient evidence, in violation of her right to due process.  Fifth and Fourteenth Amendments to the U.S. Constitution; Article I, Section 16 of the Ohio Constitution.  (August 8, 2013 Judgment Entry; V.1 at 212, 218; V.2 at 17, 43)

3. Ms. Dillard's convictions are against the manifest weight of the evidence, in violation of her right to due process.  Fifth and Fourteenth Amendments to the U.S. Constitution; Article I, Section 16 of the Ohio Constitution.  (August 8, 2013 Judgment Entry; V.1 at 185-191, 212, 218I V.2 at 17, 39)

4. The trial court committed reversible error when it entered a judgment of conviction against Ms. Dillard for third-degree-felony endangering children under R.C. 2919.22(B)(6), in violation of Ms. Dillard's rights to due process.  Fifth and Fourteenth Amendments to the U.S. Constitution; Article I, Section 16 of the Ohio Constitution.  (August 8, 2013 Judgment Entry; August 7, 2013 Verdict Form)

## III. LAW AND ANALYSIS

### A. Discovery Violation

{¶11} In her first assignment of error Dillard asserts that the trial court erred when it allowed Sgt. Gilkey to testify regarding the pseudoephedrine logs because the state failed to timely notify her before trial that he would testify. The state admitted at trial that it had violated the rule governing discovery in criminal cases by failing to disclose Sgt. Gilkey's name as a witness until the evening before trial. *See* Crim.R. 16(I) ("Each party shall provide to opposing counsel a written witness list, including names and addresses of any witness it intends to call in its case-in-chief, or reasonably anticipates calling in rebuttal or surrebuttal").

{¶12} Initially, Dillard's trial counsel requested that the trial court exclude Sgt. Gilkey's testimony. After the state specified that it would be willing to allow Dillard's counsel time to interview Sgt. Gilkey and another witness, Dillard's counsel again requested that the witnesses not be allowed to testify, "or in the alternative, time be granted to the Defense to * * * understand this information better." After the trial court denied the motion to exclude Gilkey's testimony, Dillard's counsel stated that he was ready to proceed and did not request a continuance. On appeal Dillard claims that the trial court should have granted the motion to exclude Gilkey's testimony. He does not contend that the trial court should have continued the trial.

{¶13} Under Crim.R. 16(L)(1), "[i]f at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances." A trial court has broad discretion in

determining a sanction for a discovery violation, and a trial court's decision will not be reversed absent an abuse of that discretion.  *See State ex rel. Duncan v. Middlefield*, 120 Ohio St.3d 313, 2008-Ohio-6200, 898 N.E.2d 952, ¶ 27.  "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary." *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34.

**{¶14}**  Paragraph two of the syllabus in *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 511 N.E.2d 1138 (1987), provides that when deciding whether to impose a sanction, the court must impose the least severe sanction that is consistent with the purpose of the rules of discovery.  The rule applies equally to discovery violations committed by the state or by a criminal defendant.  *Darmond* at the syllabus; *see also In re D.M.*, __ Ohio St.3d __, 2014-Ohio-3628, __ N.E.2d __, ¶ 15.

**{¶15}**  More specifically, "where a prosecutor violates Crim.R. 16 by failing to provide the name of a witness, a trial court does not abuse its discretion in allowing the witness to testify where the record fails to disclose (1) a willful violation of the rule, (2) that foreknowledge would have benefited the accused in the preparation of his or her defense, or (3) that the accused was unfairly prejudiced." *State v. Scudder*, 71 Ohio St.3d 263, 269, 643 N.E.2d 524 (1994); *State v. Wharton*, 4th Dist. Ross No. 09A3132, 2010-Ohio-4775, ¶ 24.  We conclude that the trial court did not abuse its discretion in refusing to exclude Sgt. Gilkey's testimony.

**{¶16}**  First, Dillard concedes that the state did not willfully fail to provide Sgt. Gilkey's name in discovery.

**{¶17}**  Second, advance knowledge that Sgt. Gilkey would testify would not have benefited Dillard in the preparation of her defense.  In pretrial discovery, the state

disclosed to Dillard the National Precursor Log Exchange ("NPLEx") report that Sgt. Gilkey testified about and authenticated. "The National Precursor Log Exchange (NPLEx) is a real-time electronic logging system used by pharmacies and law enforcement to track sales of over-the-counter (OTC) cold and allergy medications containing precursors to the illegal drug, methamphetamine." http://www.nplexservice.com. As Dillard admits in her reply brief, her trial counsel knew that the state's case would include testimony concerning the NPLEx report of her purchases of pseudoephedrine, a precursor to methamphetamine. Common sense would have indicated to Dillard's trial counsel that the state would attempt to link her purchases to the crimes charged. Under comparable circumstances the Supreme Court of Ohio held that foreknowledge of expert testimony concerning DNA frequency evidence would not have benefited a capital defendant where the state's DNA report had been disclosed to the defendant in discovery. *Scudder*, 71 Ohio St.3d at 269; *see also State v. Horton*, 8th Dist. Cuyahoga No. 86821, 2006-Ohio-3736, ¶ 24 (there was no indication that knowledge of the state witness's identity before trial would have aided the defense where the record established that defense counsel knew that the state intended to use lab results on drugs at trial, even though the witness's name was not identified until trial).

{¶18} Dillard claims that she was unfairly surprised by Sgt. Gilkey's testimony that her pseudoephedrine purchases raised a red flag to him through his experience investigating methamphetamine labs as a member of the narcotics task force. She suggests that this testimony unfairly surprised her because it went beyond the scope of what the state had previously represented to the trial court Sgt. Gilkey was going to

testify to—"His testimony will also be brief and reference to remain that those were the logs that he ran and that he took the drugs to the lab, will be his testimony."  Dillard conveniently ignores the fact that it was her trial counsel's own cross-examination that elicited this "surprise" testimony and not the state's direct examination.  Ultimately, Dillard's trial counsel got Sgt. Gilkey to admit that there are legitimate reasons to purchase medications containing pseudoephedrine, including treating the symptoms of colds and sinus infections.  Dillard has failed to show that she was unfairly surprised by Sgt. Gilkey's testimony.

{¶19}  Third, the trial court followed the mandate in *Lakewood* when imposing its sanction.  Dillard primarily sought the harshest sanction available—the exclusion of Sgt. Gilkey's testimony—as a remedy for the state's discovery violation.  Adopting Dillard's argument would contravene well-established precedent that requires the imposition of the least restrictive sanction consistent with the purpose of the rules of discovery. *Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, syllabus; *Lakewood*, 32 Ohio St.3d 1, 511 N.E.2d 1138, at paragraph two of the syllabus.  "Exclusion of the evidence * * * is a remedy of last resort."  Katz, Martin, Lipton, Giannelli, and Crocker, *Baldwin's Ohio Practice Criminal Law*, Section 47:23 (3d Ed. 2013).  Moreover, Dillard could have avoided any potential prejudice by accepting the state's offer to interview Sgt. Gilkey before he testified, seeking continuance, or if her trial counsel had not asked him damaging questions on cross-examination.  *See State v. Jenkins*, 4th Dist. Pickaway No. 98CA31, 2000 WL 1281211, *5 (Sept. 6, 2000) (trial court did not abuse its discretion in denying defendant's motion to disallow testimony of a witness not disclosed by the state in discovery because the defendant failed to request a

continuance or another less severe sanction). And although Dillard's trial counsel initially requested time to review the new evidence as an alternative to the request to suppress it, her counsel ultimately did not ask for a continuance to prepare. Nor does Dillard suggest on appeal that any remedy other than exclusion of the evidence was appropriate.

{¶20} Finally, Dillard's trial counsel vigorously cross-examined Sgt. Gilkey.

{¶21} Therefore, the trial court did not abuse its broad discretion by denying Dillard's request to exclude Sgt. Gilkey's testimony. We overrule Dillard's first assignment of error.

### B. Sufficiency of the Evidence

{¶22} In her second assignment of error Dillard asserts that her convictions are not supported by sufficient evidence. "When a court reviews a record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 146, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The court must defer to the trier of fact on questions of credibility and the weight assigned to the evidence. *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 132.

{¶23} R.C. 2925.04(A), which criminalizes the illegal manufacturing of drugs, prohibits a person from knowingly manufacturing or otherwise engaging in any part of the production of a controlled substance. If the drug involved is methamphetamine and

the offense was committed in the vicinity of a juvenile, the illegal manufacture of drugs is a felony of the first degree. R.C. 2925.04(C)(3)(b). Dillard purchased pseudoephedrine, a chemical used to manufacture methamphetamine, and she lived with her four-year-old child in her father's home. When a police officer and a children's services representative responded to a complaint of an active methamphetamine lab with children present at the home, Dillard answered the door and consented to a search of the residence. The search uncovered a partial methamphetamine lab consisting of a bottle in the bathroom and an active methamphetamine lab with smoke emanating from it in an unlocked storage room. Dillard indicated to the police officer that she lived at the home, and her parole officer testified that Dillard specified the home as her residence. Dillard's child was with her and the presence of the child's belongings indicated that the child resided at the home also. Dillard claimed that the child had been playing with the bottle that was a partial methamphetamine lab. After construing this evidence most favorably to the state, any rational trier of fact could have found the essential elements of the crime of illegal manufacturing of drugs in the vicinity of a juvenile proven beyond a reasonable doubt.

{¶24} She was also convicted of illegal assembly or possession of chemicals for the manufacture of drugs, R.C. 2925.041(A) prohibits persons from knowingly assembling or possessing one or more chemicals that may be used to manufacture a controlled substance. Dillard bought pseudoephedrine, a chemical used to make methamphetamine; she lived in a home where ingredients and chemicals used in the production of methamphetamine and an active methamphetamine lab were present. And she tried to explain the presence of a partial methamphetamine lab in a bottle in a

bathroom as "creek sand and water." This constituted sufficient evidence to support the conviction.[1]

**{¶25}** Dillard was also convicted of endangering children. R.C. 2919.22(B)(6) prohibits persons from allowing a child to be in the same parcel of real estate and within 100 feet of the illegal manufacture of drugs when the person knows that the illegal act is occurring. There was sufficient evidence to support the jury's finding that Dillard was guilty of endangering children for allowing her child to be in the same house where she knew there was an active methamphetamine lab.

**{¶26}** Because Dillard's convictions are supported by sufficient evidence, we overrule her second assignment of error.

## C. Manifest Weight of the Evidence

**{¶27}** In her third assignment of error Dillard contends that her convictions are against the manifest weight of the evidence. In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6254, 960 N.E.2d 955, ¶ 119.

---

[1] Dillard does not claim on appeal that the trial court erred in failing to merge her convictions for illegal manufacturing of drugs and illegal assembly or possession of chemicals for the manufacture of drugs, so we need not address the issue. *See State v. Miller*, 4th Dist. Lawrence No. 11CA14, 2012-Ohio-1922, ¶ 6 (argument that trial court should have merged convictions as allied offenses of similar import, if meritorious, would only render the judgment void, not voidable).

**{¶28}** "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." *Thompkins* at 387. But the weight and credibility of evidence are to be determined by the trier of fact. *Kirkland*, 140 Ohio St.3d 73, 2013-Ohio-1966, 15 N.E.3d 818, ¶ 132. "A jury, sitting as the trier of fact, is free to believe all, part or none of the testimony of any witness who appears before it." *State v. West*, 4th Dist. Scioto No. 12CA3507, 2014-Ohio-1941, ¶ 23. We defer to the trier of fact on these evidentiary weight and credibility issues because it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility. *Id.*

**{¶29}** Although Dillard cites evidence that she did not reside at her father's house and that she was unaware of the presence of a methamphetamine lab in the house, the jury could properly credit the state's witnesses' testimony that Dillard and her child resided at the home and reasonably infer that she knew about and participated in the production of methamphetamine. Upon our review of the evidence, we cannot conclude that the jury clearly lost its way or created such a manifest miscarriage of justice that we must reverse Dillard's convictions.

**{¶30}** Therefore, we overrule Dillard's third assignment of error.

### D. Jury Verdict Form

**{¶31}** In her fourth assignment of error Dillard asserts that the trial court erred when it convicted her of a felony charge of endangering children because the jury verdict form did not comply with R.C. 2945.75(A)(2). The jury verdict form specified that the charge for endangering children was pursuant to "O.R.C. SECTION 2919.22(B)(6)"

and that the jury found Dillard guilty "of Endangering Children in a manner and form as she stands charged in the Indictment." (OP106) The indictment had specified that Dillard was charged with endangering children in violation of R.C. 2919.22(B)(6) and that it was a felony of the third degree. (OP1)

{¶32} R.C. 2945.75 provides:

(A) When the presence of one or more additional elements makes an offense one of more serious degree:

* * *

(2) A guilty verdict shall state either the degree of the offense of which the offender is found guilty or that such additional element or elements are present. Otherwise, a jury verdict constitutes a finding of guilty of the least degree of the offense charged.

{¶33} "Pursuant to the clear language of R.C. 2945.75, a verdict form signed by the jury must include either the degree of the offense of which the defendant was convicted or a statement that an aggravating element has been found to justify convicting a defendant of a greater degree of a criminal offense." *State v. Pelfrey*, 112 Ohio St.3d 422, 2007-Ohio-256, 860 N.E.2d 735, syllabus. "The express requirement of the statute cannot be fulfilled by demonstrating additional circumstances, such as that the verdict incorporates the language of the indictment, or by presenting evidence to show the presence of the aggravated element at trial or the incorporation of the indictment into the verdict form, or by showing that the defendant failed to raise the issue of the inadequacy of the verdict form." *Id.* at ¶ 14; *State v. McDonald*, 137 Ohio St.3d 517, 2013-Ohio-5042, 1 N.E.3d 374, ¶ 18 ("in this case, which involves a criminal statute in which the addition of certain elements enhances the crime of failure to comply with the order or signal of a police officer, we look only to the verdict form signed by the

jury to determine whether, pursuant to R.C. 2945.75, McDonald was properly convicted of a third-degree felony"); *compare State v. Eafford*, 132 Ohio St.3d 159, 2012-Ohio-2224, 970 N.E.2d 891, ¶ 19 (jury verdict form that referred to the charge in the indictment did not violate R.C. 2945.75(A)).

{¶34} Dillard claims that because the jury verdict form did not specify that the endangering-children charge was a felony or state the aggravating circumstances that elevated the charge to a felony, the guilty verdict constituted a finding of guilty of the least degree of the offense charged—a misdemeanor. *See* R.C. 2919.22(E)(2)(a) ("If the offender violates division (A) or (B)(1) of this section, endangering children is * * * [e]xcept as otherwise provided in division (E)(2)(b), (c), or (d) of this section, a misdemeanor of the first degree"). The state agrees with Dillard's contention that "the jury form was inadequate to uphold a felony conviction for endangering children."

{¶35} However, we disagree with Dillard's contention notwithstanding the assent of the state. The jury verdict form specified that her endangering children charge was pursuant to R.C. 2919.22(B)(6) so it could not be a misdemeanor under R.C. 2919.22(E)(2)(a) because it was not based upon R.C. 2919.22(A) or (B)(1), the misdemeanor default provisions. Instead, under the specified subsection the least degree of the charge is a third-degree felony, which was what the trial court entered a judgment of conviction upon. R.C. 2919.19(E)(3) ("If the offender violates division (B)(2), (3), (4), or (6) of this section, except as otherwise provided in this division, endangering children is a felony of the third degree") The remainder of the subsection provides various aggravating circumstances that either elevate the degree of the crime or result in the imposition of a mandatory prison term.

{¶36} Dillard cites the principle opinion in the divided decision of the Third District Court of Appeals in *State v. Gregory*, 3d Dist. Hardin No. 6-12-02, 2013-Ohio-853, ¶ 24 for the proposition that "[n]owhere in *Pelfrey*, did the court hold that the requirement of R.C. 2945.75(A)(2) could be satisfied by including the statutory section of the offense charged."  Notably, however, the Supreme Court of Ohio did not specifically hold in *Pelfrey* or *McDonald* that inclusion of the statutory section of the offense charged in the verdict form would fail to satisfy the requirements of R.C. 2945.75(A)(2).

{¶37} More pertinently, we recently resolved this issue by holding that a verdict finding a defendant guilty of a specific Revised Code subsection that could only result in a third-degree felony conviction did not violate R.C. 2945.75(A)(2), although we noted the *Gregory* decision in passing.  *See State v. Jones*, 4th Dist. Adams No. 13CA960, 2013-Ohio-5889, ¶ 17, 19:

> Here, the jury found Jones guilty of illegal conveyance in violation of R.C. 2921.36(A)(2).  Under R.C. 2921.36(G)(2), a violation of subsection (A)(2) can only result in a third-degree felony conviction.  There are no aggravating elements necessary to enhance the penalty.  * * * Therefore, * * * the jury's verdict form was sufficient to convict Jones of a third-degree felony.

{¶38} " 'Merely because there are different levels of offenses contained within one statute does not mean that the statute is subject to the language of R.C. 2945.75.' " *Jones* at ¶ 11, quoting *State v. Reynolds*, 5th Dist. Richland No. 09-CA-13, 2009-Ohio-3998, ¶ 22.  Here, like the jury's verdict form in *Jones*, which specified a criminal offense under a subsection that could only result in a felony conviction, the jury verdict form establishes that the jury found Dillard guilty of violating R.C. 2919.22(B)(6), which could not—as Dillard claims on appeal—constitute a misdemeanor.  Although a conviction

under R.C. 2919.22(B)(6) could result in an elevated second-degree offense or a more severe sentence based on aggravating elements, the trial court followed the plain language of R.C. 2945.75(A)(2) by imposing "the least degree of the offense charged"— endangering children under R.C. 2919.22(B)(6)—in finding her guilty of a third-degree felony for endangering children.

{¶39} As we concluded in *Jones* at ¶ 18, *McDonald* is distinguishable:

> Nor are we confronted with a situation and statute like those in * * * *McDonald* * * *. The statute prohibiting the failure to comply with an order or signal of a police officer, R.C. 2921.331, contains two separate violations in separate subsections of the statute, one a misdemeanor and one a felony. The jury's verdict form was sufficient only to charge the misdemeanor version even though it contained some enhancing language from the felony version. Because the verdict form did not contain all the elements necessary for the felony version, R.C. 2945.75(A)(2) required a conviction for the least degree of the offense, i.e. a misdemeanor. No similar problem exists here.

{¶40} Therefore, we overrule Dillard's fourth assignment of error.

## IV.  CONCLUSION

{¶41} Having overruled Dillard's assignments of error, we affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Meigs County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, P.J. & Hoover, J.:  Concur in Judgment and Opinion.


For the Court


BY: _____
      William H. Harsha, Judge


### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**