[Cite as *State v. Bennington*, 2019-Ohio-4386.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

STATE OF OHIO,                                    :

    Plaintiff-Appellee,                       :       Case No.   18CA1078

    vs.                                                :

TERRY L. BENNINGTON,                       :       DECISION AND JUDGMENT ENTRY


    Defendant-Appellant.                    :

_____

APPEARANCES:

Timothy Young, Ohio Public Defender, and Jonathan Tewart, Assistant State Public Defender, Columbus, Ohio, for appellant.[1]

C. David Kelley, Adams County Prosecuting Attorney, and Kris D. Blanton, Adams County Assistant Prosecuting Attorney, West Union, Ohio, for appellee.

CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:   10-22-19
ABELE, J.

{¶ 1} This is an appeal from an Adams County Common Pleas Court judgment of conviction and sentence.   Terry L. Bennington, defendant below and appellant herein, was convicted of burglary in violation of R.C. 2911.12(A)(2), burglary in violation of R.C. 2911.12(A)(1), and two counts of felonious assault in violation of R.C. 2903.11(A)(2).   Appellant assigns one error for review:

    ASSIGNMENT OF ERROR:

    "THE STATE FAILED TO PROVIDE SUFFICIENT EVIDENCE THAT
    ANY PERSON WAS PRESENT OR LIKELY TO BE PRESENT AT 477

---

[1] Different counsel represented appellant during the trial court proceedings.

SHOEMAKER ROAD, AT THE TIME OF THE BURGLARY. R.C. 2911.12(A)(2). (OCTOBER 1, 2018 TRIAL TRANSCRIPT, P. 158-184, 193-203, 206-224, 229-239)." 1

I.

{¶ 2} In August 2018, an Adams County Grand Jury returned an indictment that charged appellant with (1) one count of burglary in violation of R.C. 2911.12(A)(2), a second-degree felony, (2) one count of burglary in violation of R.C. 2911.12(A)(1), a second-degree felony, (3) one count of felonious assault in violation of R.C. 2903.11(A)(2), a second-degree felony, and (4) one count of felonious assault in violation of R.C. 2903.11(A)(2), a second-degree felony. The charges stemmed from two incidents that involved the burglary of the homes of William Moore and Jerry Toller.

{¶ 3} At the October 1, 2018 jury trial, one victim, homeowner William Moore, testified that he, along with his wife, lived at 475 Shoemaker Road for 45 years, but moved in May 2018 to be closer to their daughter who helped him care for his ailing wife. Moore testified that he still has furniture and other items at the property, that the utilities are functional, and he visits the property every day to retrieve mail. Moore's son-in-law, Paul Wheeler, has cattle at the farm and he checks them every Sunday. Moore testified that during July 16 and 17, he "was in the house every day" and "[e]verything was like it was when we left." Moore also explained that, when he and his wife lived in the farm house, they lived in three rooms and "had a lot of other stuff in the other rooms that we didn't use." Moore stated that, when he visited the property on July 16, the house had been broken into, things were missing, and the house looked "like a tornado went through."

{¶ 4} Moore's grandson, James Dunseith, testified that the property is a farm with several barns, some outbuildings, a garage, shop, and a farmhouse where his grandfather lived for 40 to 45 years. Dunseith explained that his grandfather visited the property "pretty well every day" to get

his mail, and there he kept tax papers, bills, and personal belongings, and that his grandfather had moved out "more or less" temporarily. Dunseith stated that he visited the property on a regular basis, and that, although some cobwebs were around the home, it looked "pretty well like we lived there." Dunseith acknowledged, however, that the family had not mowed the yard for most of the summer, although "a path on the other side of the house more towards the door that led to the living room there was a path that cut back where you could pull a truck or pull equipment in there but for the most part, yes, it was grown up."

{¶ 5} On Saturday morning on the weekend of the burglary, Dunseith testified that his grandfather visited the property to retrieve the mail and the house was untouched. However, when he returned Monday morning on July 16, 2018, the door was open, items missing, and the house ransacked. Dunseith called the sheriff's office who came to investigate and noted that "a lot of things that were kind of staged close to the door" that "looked like they would be coming back."

{¶ 6} Later that night, Dunseith and his cousin returned to the farm and hid in a barn across the road to observe the home. At approximately 1:00 a.m., appellant and three others arrived at the property. After calling law enforcement, Dunseith observed two suspects exit the house, set a TV on the porch and start to cross the road toward appellant's vehicle. However, Dunseith's warning shot apparently stopped the two men. After appellant exited the house, Dunseith informed him that the sheriff was on the way and he should get on the ground. Appellant did not heed the warning and instead returned to his vehicle and drove away. At that point, Dunseith fired shots at the car.

{¶ 7} West Union Police Officer Dakota Brown testified that he responded to the call and he secured the suspects and the home. Brown testified that the house was "tossed. There were items and just like clothes everywhere. There was just, it was basically what you would expect a storage

shed to look like."    Brown stated, "the house seemed abandoned.  Seemed like it was being used as an excess storage unit."

{¶ 8} The other burglary victim (count two), Terry Toller, testified that he owns the property at a different location and, on July 17, he was preparing the vacant farm house for his daughter. Toller returned to the property at 6:00 a.m. and noticed the broken door jamb.  After Toller pushed the door open, he "looked through the living room and through the kitchen I seen feet in the bed in the back bedroom.  I walked straight to the feet and took a picture [of appellant] in there asleep on my bed."  Toller called his neighbor, Denver Williams, who came to the house and, while the two men talked, appellant awakened and attempted to exit the bedroom.  When Toller and Williams tried to detain appellant, appellant retrieved a pipe and struck both Toller and Williams.  Toller then wrestled appellant into a headlock and held him until police arrived.

{¶ 9} After a two-day trial, the jury found appellant guilty on all four counts.  The trial court sentenced appellant to serve five years in prison on count one, three years on count two, two years on count three, and three years on count four, all to be served consecutively, for an aggregate thirteen year sentence.  The court also ordered appellant to pay $1,667 in restitution to Jerry Toller.  This appeal followed.

II.

{¶ 10} In his sole assignment of error, appellant asserts that the prosecution failed to provide sufficient evidence that any person was present, or likely to be present, at 477 Shoemaker Road at the time of the burglary.

{¶ 11} "When a court reviews the record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could

have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Maxwell,* 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 146, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). "The court must defer to the trier of fact on questions of credibility and the weight assigned to the evidence." *State v. Dillard*, 4th Dist. Meigs No. 13CA9, 2014-Ohio-4974, ¶ 22, citing *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 132; *State v. Lodwick*, 2018-Ohio-3710, 118 N.E.3d 948, ¶ 9 (4th Dist.).

{¶ 12} In the case sub judice, appellant was convicted, inter alia, of two counts of burglary. The count at issue in this case is the Shoemaker Road incident (count one), a second-degree felony in violation of R.C. 2911.12(A)(2) and (D). R.C. 2911.12 provides in relevant part:

(A) No person, by force, stealth, or deception, shall do any of the following:

* * *

(2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender *is present or likely to be present*, with purpose to commit in the habitation any criminal offense;

* * *

(D) Whoever violates division (A) of this section is guilty of burglary. A violation of division (A)(1) or (2) of this section is a felony of the second degree. A violation of (A)(3) of this section is a felony of the third degree. (Emphasis added).

{¶ 13} The Supreme Court of Ohio has determined that the state meets its burden if it presents evidence "that an occupied structure is a permanent dwelling house which is regularly inhabited, that the occupying family was in and out on the day in question, and that such house was burglarized when the family was temporarily absent." *State v. Kilby*, 50 Ohio St.2d 21, 361 N.E.2d

1336 (1977), paragraph one of the syllabus (construing former R.C. 2911.11(A)(3)). The court held that the "likely to be present" requirement is intended to target the "type and use of the occupied structure and not literally whether individuals will be home from work or play at a particular time." *Kilby* at 25-27, 361 N.E.2d 1336.

{¶ 14} In *State v. Jackson*, 188 Ohio App.3d 803, 2010-Ohio-1846, 937 N.E.2d 120 (4th Dist.), this court pointed out that numerous Ohio appellate courts have reversed burglary convictions that involved temporarily absent occupants (usually for employment) when the prosecution provided no evidence to show that work schedules made it likely that the occupants could be at the residence when the break-in occurred. In *Jackson,* the occupant rented a mobile home from his parents, spent most of the month in which the break-in occurred at his parents' home rather than the rental premises, and conceded at trial that he probably would have been at his parents the night the break-in occurred. *Jackson* at ¶ 7. This court concluded that the prosecution "introduced no evidence to show that the occupant was at the residence, would be at the residence, or planned to be at the residence during the time of the burglary." *Id.* at ¶ 12.

{¶ 15} More recently, we addressed similar arguments related to the "likely to be present" element in *State v. Griffith*, 4th Dist. Pickaway No. 17CA14, 2017-Ohio-8855. In *Griffith*, the occupant and his family left their home at separate times on the day of the burglary with plans to camp in an adjacent county for the weekend. On the evening of the first day of the camping trip, the occupant returned home to take a shower. When he arrived home, however, he found his next door neighbor inside his home. *Griffith* at ¶ 8-9. The state presented evidence that the family regularly inhabited their personal dwelling house, the occupants were in and out of the house on the day in question and temporarily absent during the burglary. *Id.* at ¶ 37. We upheld Griffith's conviction

for second-degree felony burglary and concluded that the state sufficiently proved someone was likely to be present in the house at the time of the burglary.  *Id.* at ¶ 38.

{¶ **16**} In *State v. Lodwick,* 2018-Ohio-3710, 118 N.E.3d 948 (4th Dist.), we again considered the "likely to be present" element.  R.C. 2911.12(A)(2).  The state presented evidence that the occupants used the home as their primary residence, and one occupant typically worked from 7:30 a.m. to 3:00 p.m. at a school ten minutes from his home, was free to leave school at lunch, which he sometimes did between 10:30 and 11:00 a.m., and was free to leave work and come home any day during his work day if he needed to run an errand or had forgotten something at home.  The other occupant did not work, was usually home during the day, and the only reason she was not present on the day of the burglary was because of a doctor's appointment a short distance from their home.  In that case, this court concluded that the state sufficiently proved that the couple "used the residence at issue as their primary dwelling and regularly inhabited it."  *Lodwick* at ¶ 21.  Further, the evidence presented by the state demonstrated that one occupant was usually home at the time of the burglary, but she was in and out on the day in question and temporarily absent at the time of the burglary.  More important, this court noted that "[t]here is no evidence indicating Harris was gone from the home for an extended period of time or was routinely absent from the home at the time the burglary occurred."  Thus, this court concluded that sufficient evidence supported the jury's determination that someone was likely to be present in the residence at the time of the burglary.  *Id.*

{¶ **17**} As we noted in *Lodwick*, the issue is not whether a burglar subjectively believed that persons were, or were not, likely to be at the occupied structure, but whether it was objectively likely.  *Lodwick* at ¶ 18, citing *State v. Braden*, 2018-Ohio-563, 106 N.E.3d 827, ¶ 8 (1st Dist.), citing *State v. Cravens,* 1st Dist. Hamilton No. C-980526, 1999 WL 567098, *1 (June 25, 1999).

The First District Court of Appeals held that "objectively likely to be present" means the "probability or improbability of actual occupancy which in fact exists at the time of the offense, determined by all the facts surrounding the occupancy." *In re Meatchem*, 1st Dist. Hamilton No. C-050291, 2006-Ohio-4128, ¶ 16. "'Likely' means more likely than not. That is, there must be a greater than 50% likelihood that someone will be in the dwelling at the time of the burglary." *Meatchem* at ¶ 17.

{¶ 18} The First District's *Braden* decision also included a detailed list of cases that provide examples of fact patterns that led to either affirmances or reversals of findings that someone was, or was not, "likely to be present":

> Ohio courts have decided a number of cases describing the type of evidence that the state can offer to establish the 'likely to be present' element. *See, e.g., State v. Kilby*, 50 Ohio St.2d 21, 361 N.E.2d 1336 (1977) (likely to be present element satisfied where home's occupants were across the street at a neighbor's house); *State v. Weber*, 10th Dist. Franklin No. 97APA03–322, 1997 WL 798299 (Dec. 23, 1997) (likely to be present element satisfied where home owners were away on vacation, but others had permission to be in the house and neighbor was watching property while owners were absent); *State v. Beverly*, 2d Dist. Clark No. 2005 CA 85, 2007-Ohio-1028, 2007 WL 706806 (likely to be present element satisfied where occupants were away from the house for about one and a half hours during the evening); *State v. Young*, 8th Dist. Cuyahoga No. 87613, 2006-Ohio-5723, 2006 WL 3095685 (likely to be present element satisfied where evidence showed that occupants did not work on weekends, and burglary occurred on a Sunday); *State v. Baker*, 12th Dist. Butler No. CA2003-01-016, 2003-Ohio-5986, 2003 WL 22532913 (likely to be present element satisfied where occupant was a retiree with no fixed schedule); *State v. Palmer*, 8th Dist. Cuyahoga No. 89957, 2008-Ohio-2937, 2008 WL 2424455 (likely to be present element satisfied where evidence established burglary occurred close to the time occupants would have left for work). Critically, where the occupants of a house are almost always absent as part of their fixed work schedule, they are not likely to be present during their regular working hours. *See, e.g., State v. Frock*, 2d Dist. Clark No. 2004 CA 76, 2006-Ohio-1254, 2006 WL 677715 (likely to be present element not satisfied where occupant regularly came home from work to walk her dog around 2 p.m., and burglary occurred between 1:00 p.m. and 1:30 p.m.); *State v. Brown*, 1st Dist. Hamilton No. C–980907, 2000 WL 492054 (Apr. 28, 2000) (likely to be present element not satisfied where burglary occurred during the occupant's workday, and no evidence was offered that the occupant ever came home during his workday); *State v. Lockhart*, 115 Ohio App.3d 370, 685 N.E.2d 564 (8th Dist.1996) (likely to be present

element not satisfied where home's occupant testified that burglary occurred while she was at work, and that she did not return to her house at varying times). *Braden* at ¶ 11-12.

{¶ 19} In the case sub judice, after our review of the relevant case law and the trial transcript, we agree with appellant that the prosecution failed to adduce sufficient evidence to establish that any person was "likely to be present" at the time of the burglary. Construing this evidence most strongly in favor of the prosecution, Moore lived elsewhere with his wife in July 2018 and visited the house only a few minutes each day Monday-Saturday to retrieve the mail. Other relatives visited occasionally to check cattle. Although other family members may have checked the property from time to time, as the *Braden* court noted, "likely" does not mean "could." *Braden, supra,* at ¶ 8.

{¶ 20} Further, although the state contends that Moore's grandsons' stakeout of the farm the night of the burglary supports the "likely to be present" element, the grandsons positioned themselves in the barn across the road from the house during the burglary, not in the occupied structure, and, but for the initial break-in, the stakeout of the property would not have occurred.

{¶ 21} Courts have also concluded that if occupants of a home are gone for the entire work day, they are not "likely to be present" during the day. *See State v. Miller,* 2d Dist. Clark No. 2006 CA 98, 2007-Ohio-2361, ¶ 16*; see also State v. Meisenhelder,* 8th Dist. Cuyahoga No. 76764, 2000 WL 1513695 (Oct.12, 2000), *State v. Lockhart*, 115 Ohio App.3d 370, 373, 685 N.E.2d 564 (8th Dist.1996). Thus, when a homeowner is only at the property for a few minutes each day, and when other family members only sporadically check the property, an occupant is not "likely to be present" at the time of the burglary for purposes of a R.C. 2911.12(A)(2).

{¶ 22} Therefore, based on the foregoing reasons, we believe that insufficient evidence

exists, as a matter of law, of the element of anyone likely to be present to support appellant's burglary conviction under R.C. 2911.12(A)(2). Consequently, we (1) sustain appellant's sole assignment of error, and (2) reverse appellant's conviction for second-degree burglary under R.C. 2911.12(A)(2), and (3) remand this cause to the trial court to enter judgment finding appellant guilty of felony third-degree burglary under R.C. 2911.12(A)(3) and to impose sentence him for that offense.

JUDGMENT REVERSED IN PART AND CAUSE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

JUDGMENT ENTRY

It is ordered that the judgment be reversed in part and the cause remanded for further proceedings consistent with this opinion to enter judgment finding appellant guilty of felony third-degree burglary under R.C. 2911.12(A)(3) and impose sentence for that offense. Appellant shall recover of appellee the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Adams County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J.: Concurs in Judgment & Opinion
Smith, P.J.: Dissents

For the Court

BY:_____
Peter B. Abele, Judge

## NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.