[Cite as *State v. Poe*, 2024-Ohio-6099.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
JACKSON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 24CA1 |
| Plaintiff-Appellee, | : | |
| v. | : | <u>DECISION AND</u> <u>JUDGMENT ENTRY</u> |
| JEREMY RYAN POE, | : | |
| Defendant-Appellant. | : | **RELEASED 12/24/2024** |

_____

<u>APPEARANCES</u>:

Nicholas Allen, Assistant State Public Defender, Columbus, Ohio, for appellant.

Randy Dupree, Jackson County Prosecutor, Jackson, Ohio, Isaac Beller, Gallia County Assistant Prosecutor, Gallipolis, Ohio, for appellee.

_____

Hess, J.

{¶1}     Jeremy Ryan Poe appeals his conviction following a jury trial of aggravated possession of drugs (methamphetamine) and possession of a fentanyl-related compound. Poe contends that his convictions were without sufficient evidence and were against the manifest weight of the evidence because the State failed to present sufficient evidence that he possessed the two baggies of drugs found in the car in which he was a passenger. However, the State presented evidence that Poe had drug paraphernalia on him consisting of plastic baggie materials, a cut straw, and over $600 in cash. The two plastic baggies of drugs the State alleged were in Poe's possession were found next to his car seat's seatbelt buckle and were in plain view. The video from the police officer's body camera showed that the two baggies of drugs were in that location when Poe exited the vehicle so that his theory that the driver secretly placed them there after Poe exited

the vehicle was not credible. We find that the State presented sufficient evidence that Poe possessed the drugs, and his conviction was not against the manifest weight of the evidence. We overrule Poe's assignments of error and affirm the trial court's judgment.

## I. FACTS AND PROCEDURAL HISTORY

{¶2} The Jackson County grand jury indicted Poe on one count of aggravated possession of drugs (methamphetamine) in violation of R.C. 2925.11(A) and (C)(1)(c), a second-degree felony, and one count of possession of fentanyl-related compound in violation of R.C. 2925.11(A) and (C)(11)(e), a first-degree felony. Poe pleaded not guilty and the matter proceeded to a jury trial.

{¶3} At trial, the State called three officers that were involved in the traffic stop of the vehicle in which Poe was traveling as a passenger. Officer Jeremy Jackson testified that he was on traffic patrol on October 9, 2021 and stopped a vehicle at approximately 9:50 p.m. Officer Jackson stopped the vehicle because the rear of the vehicle was "completely dark. There were no lights illuminating the rear of the vehicle, neither taillights nor brake lights nor any license plate lights." Poe was a passenger in the vehicle. Both Poe and the driver told Officer Jackson that they had just left a friend's house, who they said had had a heart attack, and they were dropping Poe off at an apartment. However, Officer Jackson was aware that they had missed the turn to go to the apartment complex. Officer Jackson also learned that Poe had an outstanding warrant for his arrest. Officer Jackson asked Poe to exit the vehicle. He searched Poe and found a straw with residue, a baggie with residue, multiple other wrapped baggies, and a large amount of cash. Officer Jackson testified that wrapped baggies have significance to him as a law enforcement officer, "I've always known wrapped baggies, including baggies with residue,

including a straw with residue, a cut straw with residue; has been known to be drug paraphernalia and also the use [sic] in preparing for sale of drugs."

{¶4}    Officer Jackson testified that he was wearing a body camera that evening. The video of the body camera was played for the jury and Officer Jackson described it as showing him taking the baggies and straw from Poe, as well as a "good bit of cash" from him. He described the baggies as ripped pieces of plastic, not sandwich baggies. Officer Jackson's drug enforcement experience has led him to understand that drugs are placed in the plastic baggie material and then knotted off. Officer Jackson testified that before Poe exited the vehicle, Poe had to unbuckle his seatbelt. When the other two officers searched the vehicle, they found two bags of suspected narcotics. The narcotics were wrapped in plastic baggies and near the front center console of the vehicle by the seatbelt latch. The suspected narcotics were sent for a chemical analysis prepared by the Ohio Bureau of Criminal Investigation. The substances in the baggies were 37.52 grams of a heroin-fentanyl mixture and 23.12 grams of methamphetamine. When Officer Jackson asked Poe about the items found on him and found in the vehicle, Poe told Officer Jackson that he did not know about them and that he did not know how the paraphernalia and small baggies got on him. Officer Jackson testified that Poe insisted the entire time that he was just getting a ride home and Officer Jackson testified that there was a bicycle in the rear of the vehicle that belonged to Poe.

{¶5}    Officer Brant Derrow testified that he assisted Officer Jackson with the traffic stop. Officer Derrow and another officer, Officer Wilkes, searched the vehicle. Officer Derrow testified that on the passenger side, near the seatbelt buckle, he located two plastic baggies, one containing a brown powder substance and the other a crystal-like

substance, which he suspected were heroin and methamphetamine. The two baggies were located where Poe had been seated before he exited the vehicle. Officer Derrow was wearing a body camera and video from it was shown to the jury. Officer Derrow testified that the video shows that the tops of the bags were readily visible upon leaning into the vehicle. Officer Derrow testified that the chemical tests of the substances confirmed his suspicions that they were heroin and methamphetamine, though the heroin also had a mixture of fentanyl.

{¶6} Officer Derrow testified that Poe had small pieces of wrapped plastic on him, which are commonly used in drug trafficking "when you're separating smaller amounts of narcotics and wrapping them into bags and selling them." Officer Derrow testified that they seized $609 in cash from Poe. He also testified that it would have been very hard for Poe not to have seen the baggies where they were located because Officer Derrow simply looked in and saw them. The bags that Officer Derrow found in the vehicle were approximately the size of the palm of his hand. Officer Derrow testified that approximately three to four minutes transpired from the time Poe exited the vehicle and Officer Derrow searched it and found the plastic baggies of suspected narcotics. Officer Derrow testified that during that time it would be possible for the driver to place something in the passenger side area. However, Officer Derrow testified that he was stationed with the driver very soon after Poe exited the vehicle, and the driver did not appear to place anything in the middle console area of the vehicle. On rebuttal, Officer Jackson testified that his body camera video shows that the baggies were in the center console next to the seatbelt buckle when Poe exited the vehicle. Officer Jackson did not notice the bags at that time because he was focused on and dealing with Poe exiting the vehicle.

{¶7} Officer Chris Wilkes testified that he assisted Officer Jackson with the traffic stop and witnessed Officer Jackson search Poe and remove paraphernalia and money from Poe. Officer Wilkes testified that the small baggies and cash found on Poe were consistent with drug trafficking. The drugs found in the vehicle were near the seatbelt buckle where Poe had been seated moments before. Officer Wilkes testified that within seconds of opening the door to the vehicle to begin the search he saw the two baggies.

{¶8} The jury found Poe guilty on both counts and the trial court sentenced Poe to a minimum of 7 years on the methamphetamine count and a minimum of 10 years on the heroin/fentanyl count, to be served consecutively for a total prison term of 17 to 22 years.

## II. ASSIGNMENTS OF ERROR

{¶9} Poe presents the following assignments of error:

I.    Jeremy Poe's due process rights were violated when the trial court entered convictions for aggravated possession of methamphetamine and possession of a fentanyl-related compound without sufficient evidence. *See* Tr. 373-375; 414-415; December 6, 2023 Judgment of Conviction; December 29, 2023 Sentencing Entry.

II.    Jeremy Poe's convictions were against the manifest weight of the evidence, in violation of his right to due process of law under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution. *See* Tr. 414-415; December 6, 2023 Judgment of Conviction; December 29, 2023 Sentencing Entry.

## III. LAW AND ANALYSIS

{¶10} Poe contends that his convictions were against the sufficiency and manifest weight of the evidence. He contends that the evidence did not support his convictions because there was no evidence that he knowingly possessed the two baggies of drugs

found in the vehicle. Poe argues that the only evidence that he possessed the drugs was that he was sitting near them and there was no evidence that he knew about them.

### A. Standard of Review

### 1. Sufficiency

**{¶11}** "When a court reviews the record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Maxwell*, 2014-Ohio-1019, ¶ 146, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus; following *Jackson v. Virginia*, 443 U.S. 307 (1979); *State v. Bennington,* 2019-Ohio-4386, ¶ 11 (4th Dist.).

**{¶12}** An appellate court must construe the evidence in a "light most favorable to the prosecution." *State v. Hill*, 75 Ohio St.3d 195, 205 (1996); *State v. Grant*, 67 Ohio St.3d 465, 477 (1993). Further, "[t]he court must defer to the trier of fact on questions of credibility and the weight assigned to the evidence." *State v. Dillard*, 2014-Ohio-4974, ¶ 22 (4th Dist.), citing *State v. Kirkland*, 2014-Ohio-1966, ¶ 132; *State v. Lodwick*, 2018-Ohio-3710, ¶ 9 (4th Dist.). Thus, "a reviewing court is not to assess 'whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction.' " *State v. Davis*, 2013-Ohio-1504, ¶ 12 (4th Dist.), quoting *State v. Thompkins,* 78 Ohio St.3d 380, 390 (1997) (Cook, J., concurring). Rather, a reviewing court will not overturn a conviction on a sufficiency of the evidence claim unless reasonable minds could not reach the conclusion that the trier of fact did. *State v. Tibbetts*, 92 Ohio St.3d 146, 162 (2001); *State v. Treesh*, 90 Ohio St.3d 460, 484 (2001).

## 2. Manifest Weight

**{¶13}** In determining whether a criminal conviction is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that reversal of the conviction is necessary. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997); *State v. Hunter*, 2011-Ohio-6524, ¶ 119. To satisfy this test, the State must introduce substantial evidence on all the elements of an offense, so that the jury can find guilt beyond a reasonable doubt. *See State v. Eskridge*, 38 Ohio St.3d 56 (1988), syllabus; *State v. Harvey*, 2022-Ohio-2319, ¶ 24 (4th Dist.). Because a trier of fact sees and hears the witnesses, appellate courts will also afford substantial deference to a trier of fact's credibility determinations. *State v. Schroeder*, 2019-Ohio-4136, ¶ 61 (4th Dist.); *State v. Colonel*, 2023-Ohio-3945, ¶ 50-54 (4th Dist.).

## B. Elements of Aggravated Drug Possession

**{¶14}** Poe was convicted of two counts of aggravated possession of drugs in violation of R.C. 2925.11(A): "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." Poe contests the "knowingly possess" element of the crime. He argues that the only evidence that the State presented that he knew about the drugs was the testimony of the officers that the drugs were found near where he was sitting and he should have seen them.

**{¶15}** The elements of an offense may be established by " 'direct evidence, circumstantial evidence, or both. Circumstantial and direct evidence are of equal

evidentiary value.' " *State v. Fannon*, 2018-Ohio-5242, ¶ 100 (4th Dist.), quoting *State v. Swain*, 2002 WL 146204, *8 (4th Dist. Jan. 23, 2002). Circumstantial evidence is " ' "[t]estimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought to be proved." ' " *State v. Shields*, 2023-Ohio-2331, ¶ 34 (4th Dist.).

{¶16}  Possession can be actual possession or constructive possession.

> Possession may be actual or constructive.  "Actual possession exists when the circumstances indicate that an individual has or had an item within his immediate physical possession. Constructive possession exists when an individual is able to exercise dominion or control of an item, even if the individual does not have the item within his immediate physical possession." " '[F]or constructive possession to exist, "[i]t must also be shown that the person was conscious of the presence of the object." ' "  Although a defendant's mere proximity is in itself insufficient to establish constructive possession, proximity to the object may constitute some evidence of constructive possession. Thus, presence in the vicinity of contraband, coupled with another factor or factors probative of dominion or control over the contraband, may establish constructive possession.

(Citations omitted.) *State v. Kingsland*, 2008-Ohio-4148, ¶ 13 (4th Dist.).

{¶17}   Here the State presented evidence that Poe was able to exercise dominion or control over the two baggies of drugs even though they were not in his immediate possession because the officers testified that the baggies were in the center console, next to the seatbelt buckle where Poe was seated. They were easily within his reach without him having to extend his arm, even slightly. Although mere proximity is itself insufficient, here the State presented several other factors that constituted evidence that Poe knew of and possessed the drugs. The officers testified that the two baggies were in plain view and that all that was required to see them was to look at the console and seatbelt area. Nothing needed to be moved, opened, or pushed aside to view the baggies. An officer testified that Poe disengaged the seatbelt and removed it before exiting the vehicle.

Therefore, Poe's engagement and disengagement of the seatbelt occurred immediately next to the two baggies of drugs. Additionally, officers testified that Poe had drug paraphernalia on him – a cut straw with residue, plastic baggie materials (some with residue), and over $600 in cash – when he was searched. Therefore, there was circumstantial evidence that Poe was aware that the two baggies resting next to his seatbelt buckle were drugs under his control. Finally, an officer testified that Poe had no innocent explanation for either the drugs in the car or the drug paraphernalia found on him during the search. He told the officer he did not know how the cut straw or baggies got on him or anything about the two baggies of drugs found next to his seatbelt. His explanation that he was merely getting a ride and did not own the car is not inconsistent with him possessing drugs. Someone with a couple of baggies of drugs can still catch a ride home. Additionally, his contention that the driver could have placed the baggies there after he exited the vehicle is belied by the fact that the baggies can be seen in the video when he exited the vehicle.

{¶18} We find this case is distinguishable from *Kingsland, supra,* in which we reversed a conviction for drug possession. There the defendant, Kingsland, like Poe, was a passenger in a vehicle that he did not own. However, that is where all similarities end. Unlike the two baggies of drugs here, the drugs at issue in *Kingsland* were meth lab items in the bed of a pickup truck, partially obstructed from view by plastic bags, a bucket, and a cardboard box. They were not inside the truck next to the seatbelt buckle where Kingsland was seated. The officer in *Kingsland* testified that he looked in the truck bed and walked around it several times before he looked a second time and noticed "bottles and jars containing the milky residue." *Id.* at ¶ 15. The officers here all testified that the

drugs were in plain sight to where Poe was seated and were spotted immediately when the vehicle was searched. And, unlike Poe, Kingsland did not have any drug paraphernalia on him that he could not innocently explain away and there was no evidence that Kingsland had specialized knowledge that would have shown he should have recognized the objects in the truck bed as components of a homemade methamphetamine lab. *Id.* at ¶ 16.

{¶19} We reject Poe's contention that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. After viewing the evidence in a light most favorable to the prosecution, we conclude that any rational trier of fact could have found he knowingly possessed the two baggies of drug found next to the seatbelt latch where he was seated. And, after our review of the record, and after we consider the evidence and testimony adduced at trial and all reasonable inferences therefrom, witness credibility, and the conflicts in the evidence or lack thereof, we do not believe that the jury clearly lost its way so as to create a manifest miscarriage of justice such that Poe's convictions must be reversed and a new trial ordered.

{¶20} We overrule Poe's assignments of error.

## IV. CONCLUSION

{¶21} Having overruled the assignments of error, we affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## **<u>JUDGMENT ENTRY</u>**

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Jackson County Court of Common Pleas to carry this judgment into execution.

<u>IF</u> A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.: Concur in Judgment and Opinion.

For the Court

BY: _____
Michael D. Hess, Judge

## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**